EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,

v.

CLAY PRINTING COMPANY,
Defendant–Appellee.

No. 93–1605.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 28, 1993.

Decided Jan. 6, 1994.

Robert John Gregory, Office of Gen. Counsel, E.E.O.C., Washington, DC, argued (James R. Neely, Jr., Deputy Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Lorraine C. Davis, Asst. Gen. Counsel, Office of Gen. Counsel, on brief), for plaintiff-appellant.

Mark William Merritt, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, argued (John K. Webster, on brief), for defendant-appellee.

Before RUSSELL and HALL, Circuit Judges, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

K.K. HALL, Circuit Judge:

In May 1990, the Equal Employment Opportunity Commission ("EEOC" or "Commission") brought an age discrimination action against Clay Printing Company ("Clay"). The suit alleged that Clay had discharged five employees and constructively discharged at least eighteen others, all in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* In April, 1991, the district court granted summary judgment to Clay on all of EEOC's claims, and EEOC appealed.[1] In a split decision, we affirmed. *EEOC v. Clay Printing Co.*, 955 F.2d 936 (4th Cir.1992).

Clay then moved for attorney's fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). The district court ruled that the government had failed to demonstrate that its position was substantially justified, and Clay was awarded attorney's fees of $192,792.50 and expenses of $15,348.92. EEOC appeals.[2]

### I

The relevant provision of EAJA provides as follows:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or

1. The appeal involved only the five discharged employees and four of the eighteen employees who had allegedly been constructively discharged.

2. In this appeal, EEOC contests only Clay's eligibility for attorney's fees; the amount of the award is not in dispute. EAJA caps the hourly rate that a court can award, though the cap may be raised by the court to reflect cost-of-living increases. 28 U.S.C. § 2412(d)(2)(A). The district court raised the cap in this case from $75 to $150 per hour. Clay attempted to avoid the statutory cap altogether by claiming bad faith on the government's part, but the district court did not address this argument. In any event, Clay did not cross-appeal.

against the United States ..., unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The award is mandatory *unless* the government can demonstrate that its position was "substantially justified." *See Crawford v. Sullivan,* 935 F.2d 655, 658 (4th Cir.1991) ("[T]he government has the burden of proving that its litigation position was substantially justified."). We review for abuse of discretion. *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). "Substantially justified" means "justified to a degree that could satisfy a reasonable person" or having a "reasonable basis both in law and fact." *Id.* at 565.

█ In its ruling granting the fee motion, the district court quoted from our opinion affirming the summary judgment: "As the Fourth Circuit has pointed out, the EEOC has made 'a vain attempt ... to create a triable issue of age discrimination out of little more than thin air.'" *EEOC v. Clay Printing Co.,* C/A ST–C–90–53–MU (W.D.N.C. Mar. 18, 1993) (opinion) (quoting *Clay Printing,* 955 F.2d at 944). On appeal, each party engages in an exhaustive analysis of the evidence, with each putting its particular spin on what the evidence does or does not show. We believe, however, that it is unnecessary to reexamine the evidence in any great detail because there are other "objective indicia" of the weakness of the government's case. *See Pierce,* 487 U.S. at 568 (noting that certain "'objective indicia' ... such as the terms of a settlement agreement, the stage at which the merits were decided, and the views of other courts on the merits ... can be relevant [to the inquiry of whether the district court abused its discretion]."). There is no settlement agreement in the present case; however, other objective indicia provide ample support for our ruling that the fee award did not constitute an abuse of the district court's discretion.

### A

█ The Supreme Court discounted the "stage of decision" factor in *Pierce* because that case centered on questions of law rather than fact, and "summary disposition proves only that the district judge was efficient." *Id.* at 569. When summary judgment rests on the government's inadequate factual showing, however, we think that the "stage of decision" factor assumes added prominence in the "substantially justified" inquiry, because the burden on the party resisting a summary judgment motion is so minimal. *See Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir.1990) (district court is required to assess the evidence in the light most favorable to non-moving party). Nevertheless, EEOC was unable to convince us or the district court that even one of the twenty-three former employees on whose behalf the suit was brought had a strong enough case to advance. It is also significant that EEOC did not fail for lack of trying; the Commission investigated for two and a half years before the action was filed, and the parties conducted ten months of discovery before the summary judgment was rendered.

### B

*Why* a decision on the merits was made can be of particular importance.

[M]erits decisions in a litigation, whether intermediate or final, cannot, standing alone, determine the substantial justification issue. But of course they—and more critically their rationales—are the most powerful available indicators of the strength, hence reasonableness, of the ultimately rejected position. As such, they obviously must be taken into account both by a district court in deciding whether the Government's position, though ultimately rejected on the merits, was substantially justified, and by a court of appeals in later reviewing that decision for abuse of discretion.

*United States v. Paisley,* 957 F.2d 1161, 1167 (4th Cir.), *cert. denied sub nom. Crandon v. United States,* —— U.S. ——, 113 S.Ct. 73, 121 L.Ed.2d 38 (1992). We turn, then, to the rationales for both the district court's initial judgment on the merits and our decision affirming that judgment.

It is hard to imagine how the district court could have used stronger language to describe the weakness of EEOC's case. "The discharge claims advanced here are, to say the least, simply implausible.... The evidence shows, without any doubt, that [the company's] employees were treated basically the same.... [EEOC's evidence] reveals no tenable basis whatsoever for the constructive discharge theory.... The record in this case is characterized, repeatedly, by implausibility." The District Court noted that *none* of the former employees had testified that he or she had any "evidence or information to support any claim of age discrimination." Moreover, the court noted that no statistical evidence had been adduced. All in all, the unmistakable tenor of the opinion is that EEOC wasted everybody's time and was grasping at evidentiary straws. That assessment of EEOC's case did not improve on appeal.

Inasmuch as our review of the summary judgment was *de novo*, we did not rely on the district court's views in any way. *See Miller*, 906 F.2d at 974. However, we readily came to the same conclusion as the district court. In addition to the "thin air" comment, we pointed out that EEOC failed to show even a prima facie case (under the *McDonnell–Douglas* test) for three of the five discharge cases. *Clay Printing*, 955 F.2d at 943. Moreover, we noted that "the record is devoid of evidence indicating that [the company's] reasons for discharging [any of the discharge claimants] were pretextual or unworthy of credence." *Id.* With regard to the constructive discharge claimants, we said that the "EEOC's evidence falls woefully short" of showing that the company acted deliberately or intolerably. *Id.* at 945. All in all, EEOC's case failed quickly and completely.

### C

One judge dissented from our opinion affirming the summary judgment, which EEOC contends is strong evidence that its position was substantially justified. We agree that the dissenting judge's views should be considered, but this factor alone (and it is alone) is not enough to convince us

that the district court's assessment of the case constituted an abuse of its discretion.

We have previously recognized the "possible incongruity" in finding no substantial justification where "one or more presumably reasonable Article III judges" have found merit in the government's position at some stage in the litigation. *Paisley*, 957 F.2d at 1167; *see also Pierce*, 487 U.S. at 569, 108 S.Ct. at 2552 ("Obviously, the fact that one other court agreed or disagreed with the government does not establish whether its position was substantially justified."). Nevertheless, our majority opinion examined the merits of each of the twenty-three "cases" involved in EEOC's action, and not one approached what might be considered a close case. We cannot say that the district court, which had initially reached the same decision after a similarly exhaustive analysis of the merits, abused its discretion in interpreting our merits decision as essentially dispositive on the substantial justification issue.

### II

■ EEOC also argues that it should not be subjected to attorney's fees under EAJA's substantial justification standard at all; instead, only bad faith on the Commission's part should entitle a prevailing defendant to fees. We reject the argument.

ADEA has no express provision for the award of attorney's fees. Instead, ADEA incorporates certain remedial and procedural provisions of the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. § 626(b). The incorporated provision that deals with attorney's fees reads in relevant part:

> Any employer who violates the provisions of [specified sections of FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of [a section of FLSA] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of [29 U.S.C. §] 215(a)(3).... An action to recover the liability prescribed in either of

the preceding sentences may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.... The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b). This section also provides that the right to bring an action "by or on behalf of any employee" terminates when the Secretary of Labor files an action.

FLSA's remedial provisions had to be tailored somewhat to meet ADEA's needs. ADEA damages are "deemed to be unpaid minimum wages and unpaid overtime compensation for purposes of [FLSA]." 29 U.S.C. § 626(b); *see Fariss v. Lynchburg Foundry,* 769 F.2d 958, 964 n. 7 (4th Cir. 1985) (explaining how the sections are linked). Instead of the private right of action terminating upon the filing of an action by the Secretary of Labor, § 626(c)(1) provides for a similar termination upon the filing of an ADEA action by EEOC. But there is no mention of attorney's fees beyond that contained in the above-quoted FLSA provision.

■ Thus, this much is readily apparent— under FLSA, a defendant employer is liable for attorney's fees to a prevailing plaintiff-employee. *Cf. Richardson v. Alaska Airlines, Inc.,* 750 F.2d 763, 765–67 (9th Cir. 1984) (holding that attorney's fees under ADEA may not be recovered against a defendant who was not an employer of the plaintiff). By virtue of the incorporation · of § 216(b), the same holds true for ADEA actions *brought by employees* against their employer or former employer. The statute does not provide that a prevailing defendant may likewise recover his fees; rather, the statute is silent on the point. EEOC makes too much of this silence.

The agency's argument seems to be that the vacuum created by the absence of any provision for fee awards to prevailing defendants in the FLSA/ADEA fee-shifting statute should be filled not by EAJA but, rather, by the sort of fee-shifting provisions used in *other* civil rights statutory schemes, such as

Title VII. In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court established different standards for awarding fees to prevailing plaintiffs and defendants under 42 U.S.C. § 2000e–5(k). While a plaintiff only has to "prevail" to get fees, prevailing defendants get fees only if the action against them is shown to have been "frivolous, unreasonable, or groundless." *Id.* at 422, 98 S.Ct. at 701. The court based this dual standard on "equitable considerations"—an individual Title VII plaintiff is the "chosen instrument of Congress" to vindicate important public policies, and fee awards to such plaintiffs are awarded against violators of the law expressing such policies. *Id.* at 418, 98 S.Ct. at 698.

EEOC wants these same "equitable. considerations" to govern in the instant case. The agency adds that intentional employment discrimination is particularly tough to prove and that attorney's fee awards will tend to dampen aggressive enforcement of the anti-discrimination statutes. Clay, on the other hand, points to the public policy behind EAJA—the government will not be permitted to use its vast resources in baseless litigation against the citizens of this nation. *See Evans v. Sullivan,* 928 F.2d 109, 111 (4th Cir.1991) (noting that Congress intended EAJA to act as "an instrument for curbing ... the unreasonable exercise of governmental authority."). The question of which policy was foremost in the collective mind of Congress is irrelevant, however, when the words point in only one direction.

■ EAJA provides in relevant part: "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... in any civil action ... brought by or against the United States ..." The statute seems clear enough—in *any* civil action, if the United States is a party and loses, the other party gets attorney's fees *unless* some other statute *specifically* says otherwise. EEOC does not disclose another statute that might keep us from turning to EAJA when EEOC loses an age discrimination suit. Congress clearly intended that

818

defendants be eligible for fees against the government:

> (c) It is the purpose of [EAJA]—
>
> (1) to diminish the deterrent effect of seeking review of, *or defending against,* governmental action by providing in specified situations an award of attorney fees ... and other costs against the United States....

Note following 5 U.S.C. § 504 (Congressional Findings and Purposes) (emphasis added). EAJA makes no distinction between civil actions involving anti-discrimination statutes and those involving other areas of the law; attorney's fees are available in *any* civil action. Until another statute "specifically provide[s]" that ADEA defendants cannot get such fees from the United States, the plain language of EAJA will continue to control.

*AFFIRMED.*