**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SOUTHERN DREDGING COMPANY,
INCORPORATED,
Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA; JOHN
CHANNON, Acting Secretary of the

Army; ARTHUR E. WILLIAMS, Chief
of Engineers; ROBERT F. UNGER,
Major, United States Army Corps
of Engineers; CAROL M. BROWNER,
Administrator, Environmental
Protection Agency,
Defendants-Appellees.

No. 95-3099

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(CA-93-203-2-18)

Argued: July 16, 1996

Decided: September 12, 1996

Before MURNAGHAN and ERVIN, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Howard Payne, STARFIELD & PAYNE, Fort
Washington, Pennsylvania, for Appellant. Carl Strass, Environment &

Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON BRIEF:** Stephen P. Groves, W. Jefferson Leath, Jr., YOUNG, CLEMENT, RIVERS & TISDALE, L.L.P., Charleston, South Carolina, for Appellant. Lois J. Schiffer, Assistant Attorney General, Edward Shawaker, Martin W. Matzen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Southern Dredging, plaintiff-appellant, sought attorney's fees from the United States as a prevailing party under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). The district court denied Southern Dredging's motion for fees. The sole issue on appeal is whether the district court thereby abused its discretion. For the following reasons, we find that it did not.

I

In 1988, two supervisors of the dredge vessel Cherokee, owned by Southern Dredging, discharged several tons of dredge spoil into the Cooper River in South Carolina in violation of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a). The two employees were subsequently fired by Southern Dredging.

In connection with the 1988 incident, Southern Dredging initially pled guilty to a criminal violation of the CWA. Southern Dredging withdrew its guilty plea, however, after the Environmental Protection Agency ("EPA") placed it on a list of violating facilities, which meant that it could not contract with government agencies. CWA § 508(a), 33 U.S.C. § 1368(a); 40 C.F.R. § 15.10. Subsequently, Southern

2

Dredging entered into a second plea agreement, in which it pled guilty to a misdemeanor in violation of the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. §§ 407, 411, for the same incident.**1** In the second plea agreement with the United States, the United States Attorney agreed that the United States would "not seek to impose any additional criminal enforcement activities [ ] against" Southern Dredging arising out of the 1988 incident.

In 1992, the two employees who had supervised the 1988 illegal discharge into the Cooper River were convicted of felony violations of the CWA. Following their conviction, notwithstanding the second plea agreement, the EPA placed the vessel Cherokee on its list of facilities violating the CWA. CWA § 508(a), 33 U.S.C. § 1368(a); 40 C.F.R. § 15.10. As previously explained, placement on the list prohibited all federal agencies from contracting with Southern Dredging for the use of the Cherokee.

Southern Dredging filed a lawsuit challenging the listing. Southern Dredging obtained rulings in its favor on a motion for a temporary restraining order, a preliminary injunction, and for summary judgment. The district court based its summary judgment ruling primarily on its interpretation of § 508 of the CWA (the statutory listing provision).

Section 508(a) of the CWA provides in pertinent part:

> No Federal agency may enter into any contract with any person, who has been convicted of any offense under section 1319(c) of this title, for the procurement of goods, materials, and services if such contract is to be performed at any facility at which the violation which gave rise to such conviction occurred, and if such facility is owned, leased, or supervised by such person.

_____

**1** In addition to the above plea agreements, in January 1991, Southern Dredging entered into a "global settlement" with the Department of the Army for the purposes of settling all criminal, civil, and administrative issues and of avoiding "protracted litigation."

3

33 U.S.C. § 1368(a). The district court ruled that a plain reading of § 508 revealed that the clauses of § 508 were conjunctive, meaning that the government could not contract with a person convicted of a violation of the CWA if that person intended to perform the contract at a facility where the violation occurred <u>and</u> the facility was owned, leased, or supervised by a convicted person. Because neither Southern Dredging, the Cherokee, nor any of the Cherokee's current supervisors or lessees had been convicted of violating the CWA, the district court ruled that the Cherokee had been improperly placed on the list. Similarly, the district court found 40 C.F.R. § 15.10, the EPA's interpretive regulation of § 508(a), inapplicable because the clear statutory language of § 508(a) required that Southern Dredging or the Cherokee's current supervisors or lessees be convicted of violating the CWA in order for the listing provision to be implemented.**2** The district court did not address the impact, if any, of Southern Dredging's plea agreement with the government.

On appeal we vacated and remanded the district court's order, requesting that the ramifications of the second plea agreement on the listing be considered. <u>Southern Dredging Co. v. United States</u>, 35 F.3d 557 (4th Cir. Sept. 13, 1994) (Table). We did not reach the underlying merits. Although we stated that Southern Dredging's statutory arguments "carr[ied] strong weight", we remanded for a determination as to whether the plea agreement, whereby Southern Dredging pled guilty to a misdemeanor for violating the Rivers and Harbors Act, barred the United States from listing the Cherokee.

In the interim, the listing period for the Cherokee expired and the United States had no reason to extend it. Because the listing was no longer current or applicable, on remand the district court dismissed the lawsuit as moot.

---

**2** Section 15.10 provides:

> The Listing Official shall place a facility on the List of Violating Facilities if the facility which gave rise to the conviction is owned, leased, or supervised by any person who has been convicted of a criminal offense under section 113(c)(1) of the CAA or section 309(c) of the CWA. The mandatory listing is automatically effective upon conviction.

4

Southern Dredging initiated a second round of litigation by seeking attorney's fees under the EAJA. The district court refused to grant attorney's fees, finding that the United States' position had been substantially justified. Southern Dredging has appealed.

II

The EAJA provides that, in actions brought by or against the United States, attorney's fees shall be awarded to the other party if it prevails, unless the United States' position was substantially justified or special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1).[3] The award of fees to a prevailing party is mandatory unless "the government can demonstrate that its position was `substantially justified.'" EEOC v. Clay Printing Co., 13 F.3d 813, 815 (4th Cir. 1994). Substantially justified means "justified to a degree that could satisfy a reasonable person" or having a "reasonable basis both in law and fact." Id. (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). It is the government's burden to make that showing. Crawford v. Sullivan, 935 F.2d 655, 658 (4th Cir. 1991).

The court reviews a lower court's denial of attorney's fees under the EAJA for abuse of discretion. Pierce, 487 U.S. at 559-62; Clay Printing Co., 13 F.3d at 815. In determining whether the United States' position was reasonable, we look to the"totality of circumstances." Roanoke River Basin Ass'n v. Hudson , 991 F.2d 132, 139 (4th Cir.), cert. denied, 510 U.S. 864 (1993).

The United States read § 508 disjunctively, taking a facility-based approach to listing violating facilities. It reasoned that any facility where violations occurred and the supervisors were convicted should be placed on the violating facility list, whether or not the supervisors were still employed by the facility.

While the district court read the statute conjunctively, it found a number of reasons why the government's position was substantially justified. First, the district court found that the government's arguments were based on a reasonable statutory construction of § 508(a)

_____

[3] The district court found that Southern Dredging was a prevailing party. Neither party has disagreed with that finding on appeal.

5

and its accompanying interpretive regulation, 40 C.F.R. § 15.10. Second, the district court found reasonable the government's reliance on a presidential executive order.**4** Third, the district court concluded that the United States had reasonably relied on the CWA's legislative history in arguing that Congress was primarily interested in addressing facilities that violated the act--not persons. **5** Fourth, the district court noted that the United States relied on the general rule which calls for a broad and generous interpretation of remedial environmental statutes. See, e.g., United States v. Standard Oil Co., 384 U.S. 224, 225-26 (1966). Finally, the district court noted that the determination of the exact meaning of § 508(a) was a matter of first impression. For those five reasons, the district court found that the government's position was reasonable and substantially justified in law and fact and denied attorney's fees. We agree.

The loss of a trial does not determine whether the United States' position was substantially justified. Nor does the "substantially justified" standard require the United States to establish that its position was based on a "substantial probability of prevailing." SEC v. Fox, 855 F.2d 247, 252 (5th Cir. 1988) (quoting legislative history of EAJA, H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, reprinted in 1980 U.S.S.C.A.N. 4984, 4989-90). Rather, the standard allows the government to advance "in good faith . . . novel but credible . . . interpreta-

_____

**4** The CWA requested the President to issue an executive order requiring federal agencies to comply with § 508(a). The executive order interprets § 508(a) as barring the United States from contracting for the use of "facilities which have given rise to a conviction for an offense under . . . section 309(c) of the [Clean] Water Act." Exec. Order No. 11738, 38 Fed.Reg. 25161 (Sept. 10, 1973). Thus, one can make a reasonable argument that the President interpreted § 508(a) as being facility-based. The district court found that the United States' belief that the President's interpretation would receive deference was reasonable and supportable in law. See Dames & Moore v. Regan, 453 U.S. 654, 668 (1981) (stating that where "the President acts pursuant to an express or implied authorization from Congress" the executive action is "supported by the strongest of presumptions and the widest latitude of judicial interpretation").
**5** The conference committee report states that: "No Federal agency could enter into any contract involving any facility convicted under section 309." S. Rep. No. 1236, 92d Cong., 2d Sess. (1972), reprinted in 1972 U.S.C.C.A.N. 3776, 3824 (emphasis added).

6

tions of the law that often underlie vigorous enforcement efforts." Id. (quoting Russell v. National Mediation Bd., 775 F.2d 1284, 1290 (5th Cir. 1985)); see also Griffon v. United States Dep't of Health & Human Servs., 832 F.2d 51, 53 (5th Cir. 1987) (also quoting Russell).

While the statutory argument Southern Dredging makes is certainly strong, as we noted in our previous opinion remanding the district court's summary judgment order, the government's position was not entirely unreasonable or without a basis in fact and law. Indeed, although it ultimately lost, the government made a credible case for its own statutory interpretation given the legislative history, the principle regarding broad interpretations of environmental enforcement regulations, and the Executive Order.

Additionally, the lawsuit brought by Southern Dredging was one of first impression on the meaning and scope of the § 508(a) listing program. In lawsuits involving first-impression interpretations of statutes, many circuits, including ours, have found that the United States is presumptively substantially justified within the meaning of the EAJA if its position is a reasonable legal position and the question is being addressed for the first time in the circuit. Hyatt v. Shalala, 6 F.3d 250, 256 (4th Cir. 1993); see also TKB Int'l, Inc. v. United States, 995 F.2d 1460, 1468 (9th Cir. 1993); Stebco, Inc. v. United States, 939 F.2d 686, 688 (9th Cir. 1990); De Allende v. Baker, 891 F.2d 7, 12-13 (1st Cir. 1989). When the issue of statutory interpretation is one of first impression not having been addressed by any court, that principle is even stronger. Griffon, 832 F.2d at 52-53.

Southern Dredging argues that, when the totality of the circumstances are considered--in particular, the plea agreement--the government's position cannot be considered reasonable. Southern Dredging contends that the EPA is bound by the United States' plea agreement not to subject Southern Dredging to any additional penalties stemming from the 1988 incident other than those Southern Dredging agreed to in the agreement. See Santobello v. New York, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled.").

7

The district court failed to address the impact of the plea agreement. Thus, we remain uncertain as to whether Southern Dredging would have prevailed on the merits under the terms of the plea agreement alone. Whether Southern Dredging or the government would have prevailed on the merits, however, is not what concerns us here. Instead, we must examine "the record . . . made in the civil action for which fees and other expenses are sought," 28 U.S.C. § 2412 (d)(1)(B), to determine whether the government's position was substantially justified even in light of the plea agreement.

There is very little fact-finding as to the plea agreement. We do know, however, that the government contended that the listing was not an "additional criminal enforcement activity," from which the plea agreement protected Southern Dredging. Instead, the government argued that listing is a sanction that occurs automatically and immediately upon conviction of a facility's supervisors, owners, or lessees. See 40 C.F.R. § 15.10. Furthermore, the government argued that the listing was a penalty distinct in nature from a criminal action and therefore beyond the scope of the plea agreement. See Shane Meat Co., Inc. v. United States Dep't of Defense, 800 F.2d 334, 338 (3d Cir. 1986). The government also contended that Southern Dredging was aware of the government's position on listing when it entered into the plea agreement. The government's position was set forth in its briefs during the litigation following the first plea agreement. It argued that the United States Attorney's office lacked the authority to undo statutory and regulatory provisions on mandatory, automatic listings. It asserted that only the Administrator of the EPA, the Case Examiner, or the Assistant Administrator had authority to undo a listing. While we may or may not have ultimately agreed with the government on the merits, based upon the record before us and the five factors listed by the district court, we conclude that the government's position was substantially justified.

Accordingly, the district court's order denying Southern Dredging attorney's fees is

AFFIRMED.

8