**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**COMPLETE DEWATERING, INC., a Division of Complete Machinery & Equipment Co., Inc., formerly d/b/a Complete Wellpoint of South Florida, Inc., A Division of Complete Machinery & Equipment Co., Inc., and Complete Dewatering Pumps and Wellpoints, Inc., Defendants.**

**No. 92–6441–CIV.**

United States District Court, S.D. Florida.

April 23, 1998.

Gedety Nayets Serralta, Equal Employment Opportunity Commission, Miami, FL, for Plaintiff.

Bruce Cohen, Atlanta, GA, for Defendants Complete Dewatering Pumps and Wellpoints, Inc.

Jeffrey M. Goodz and Mark J. Neuberger, Aventura, FL, for Defendant Complete Dewatering, Inc.

## ORDER REVERSING MAGISTRATE'S REPORT AND RECOMMENDATION AND REMANDING CASE

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon the March 12, 1998 Report and Recommendation of the Honorable William C. Turnoff, Magistrate–Judge, recommending that Defendants' Joint Motion for Award of Attorney's Fees be denied. Defendants filed objections to the Magistrate's Report on March 26, 1998, Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a response on April 10, 1998, and Defendants filed a reply on April 17, 1998.

### Procedural Background

On August 5, 1991, Al Winnemore ("Winnemore") filed a charge of discrimination against Defendant Complete Dewatering, Inc. ("CDI"), alleging that it had improperly terminated him in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 42 U.S.C. §§ 621–634. On May 6, 1992, following a nearly year-long investigation, the EEOC filed a Complaint in this Court, alleging that Winnemore's termination violated the ADEA. In August 1995, the EEOC amended its Complaint to add Complete Dewatering Pumps and Wellpoints, Inc. ("Wellpoints") as a defendant, contending that Wellpoints' 1994 purchase of some of CDI's assets made it a successor employer. On May 23, 1997, after extensive review of Defendants' Motions for Summary Judgment, the responses thereto, and the related evidence, the Court entered an Order granting CDI's Motion for Summary Judgment on the ground that the EEOC had failed to establish a *prima facie* case of age discrimination ("Summary Judgment Order"). The Court denied as moot Wellpoints' motion, reasoning that because CDI committed no discrimination, there was no need to reach the merits of Wellpoints' motion. The Court accordingly entered final judgment on behalf of both Defendants. Defendants then moved for attorney's fees, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, which allows prevailing parties in civil actions against the government to recover attorney's fees from the government if the government's position was not "substantially justified." *Id.* § 2412(d)(1)(A). In his March 12, 1998 Report, the Magistrate held that (1) the EEOC was substantially justified in bringing this action and (2) therefore the Court need not reach the issue of whether the EAJA applies to cases brought under the ADEA.

### Legal Standard

Defendant's have filed objections to the Magistrate's Report. Section 636(b)(1) of the Federal Magistrate's Act requires a district court to make a *de novo* determination of those parts of the Magistrate's Report and Recommendation to which objection is made.

28 U.S.C. § 636(b)(1); *United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Gropp v. United Airlines, Inc.* 817 F.Supp. 1558, 1560 (M.D.Fla. 1993). Thus, this Court will review the findings of the Magistrate *de novo*.

### Discussion

#### A. The EEOC Was Not Substantially Justified

The Court respectfully disagrees with the Magistrate's conclusion that the EEOC was substantially justified in its litigation of this case. The EAJA provides in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). In a decision affirming this Court's award of attorney's fees against the government pursuant to the EAJA (*Haitian Refugee Center, Inc. v. Smith,* 644 F.Supp. 382 (S.D.Fla.1984) (King, C.J.)), the Eleventh Circuit laid out the framework for determining when the government's action is "substantially justified." *See Haitian Refugee Center v. Meese,* 791 F.2d 1489, 1496–98 (11th Cir.1986), *aff'd in part and vacated in part,* 804 F.2d 1573 (11th Cir.1986). The court first noted that "[t]he government bears the burden of showing that its position was substantially justified." *Id.* at 1496 (citing legislative history and cases). The court further observed that "[t]he standard for substantial justification is one of reasonableness. The government must show 'that its case had a reasonable basis both in law and fact.'" *Id.* at 1497 (quoting H .R. Rep. No. 1418, 96th Cong., 2d Sess., 1980 U.S.C.C.A.N. 4984, at 4989 and citing cases); *see also Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). However, "[b]ecause Congress in 1980 rejected a standard of 'reasonably justified' and selected 'substantially justified,' the test is actually more than mere reasonable-

ness." *Meese*, 791 F.2d at 1497 (citing cases). The Eleventh Circuit has also held that "the presence of a factual dispute, standing alone" does not preclude the district court from finding that the government's position was not substantially justified. *Reese v. Sullivan*, 925 F.2d 1395, 1396 (11th Cir. 1991). Finally, the Eleventh Circuit has further refined the substantially justified standard, stating:

> An examination of whether the government's position was substantially justified encompasses an evaluation of both the agency's prelitigation conduct and the subsequent litigation positions .... Under this inquiry, it is not sufficient for the government to show that some of its earlier positions or arguments were valid. Unless the government can establish that all of its positions were substantially justified, the claimant is entitled to receive attorney's fees.

*Myers v. Sullivan*, 916 F.2d 659, 666–67 n. 5 (11th Cir.1990) (citations omitted).

■ The Court finds that the Magistrate, having not had the benefit of reviewing the motions for summary judgment and the evidence pertaining thereto, incorrectly found that the EEOC's position was substantially justified. Initially, the Court observes that the procedural history of the case itself indicates that the EEOC's position did not meet the standard of being somewhat more than reasonable. *See Meese*, 791 F.2d at 1497. The EEOC proceeded with the case through nearly a year of investigation and five years of litigation only to have the case disposed of at the summary judgment stage for failing to state a *prima facie* case. *See Id.* (it is "helpful to keep in mind in evaluating the reasonableness of the government's position" the "foreseeable length and complexity of the litigation") (citing *Spencer v. NLRB*, 712 F.2d 539, 559–60 (D.C.Cir.1983)); *EEOC v. Clay Printing Co.*, 13 F.3d 813, 815 (4th Cir.1994) (assessing attorney's fees against the EEOC in an ADEA case and noting that "[i]t is also significant that EEOC did not fail [at the summary judgment stage] for lack of trying; the Commission investigated for two and a half years before the action was filed, and the parties conducted ten months of discovery before the summary judgment was rendered.").

■ Furthermore, the fact that the Court granted summary judgment for failure to state a *prima facie* case is itself noteworthy. As the Fourth Circuit stated in *Clay Printing Co.*, 13 F.3d at 815:

> The Supreme Court discounted the "stage of decision" factor in *Pierce* because that case centered on questions of law rather than fact, and "summary disposition proves only that the district judge was efficient." When summary judgment rests on the government's inadequate factual showing, however, we think that the "stage of decision" factor assumes added prominence in the "substantially justified" inquiry, because the burden on the party resisting a summary judgment motion is so minimal.

*See also Poole v. Rourke*, 779 F.Supp. 1546, 1563 (E.D.Cal.1991) (in determining substantial justification, court may take into account "ability of the United States to make out a *prima facie* case").

Despite the procedural history of the case, the Magistrate concluded that the evidence presented by the EEOC supported a finding that the EEOC was substantially justified. The Magistrate observed that the EEOC Complaint alleged that Winnemore, a 67 year old man, was fired after 20 years of service as a salesperson and manager by CDI employee Steve Mogle ("Mogle") and replaced with a 26 year old man, Timothy Fruits ("Fruits"). The EEOC attributed to Mogle the statement that CDI had "let [Winnemore] go because he was over the hill." In the Summary Judgment Order, however, the Court observed that despite the EEOC's allegation in the Complaint that Mogle terminated Winnemore in May of 1990, Winnemore was actually terminated on March 30, 1990 by Fred Share, then acting CEO, and not by Mogle, as Mogle did not become CEO of CDI and did not have the power to terminate employees until April 1990. Although the Magistrate recognized that "there appears to be competent evidence in the record" to support the conclusion that Share terminated Winnemore on March 30, 1990 (R & R at 7), the Magistrate nonetheless concluded that the EEOC was substantially jus-

tified in alleging that Mogle terminated Winnemore in May of 1990. A closer inspection of the record, however, clearly contradicts this conclusion. Winnemore's employment record reflects that his employment ended on March 30, 1990. Furthermore, both Winnemore and Share testified in deposition that Winnemore was taken off payroll on March 30. The Magistrate relies on Winnemore's speculation that "although he had been placed on commission and his *salary* had been terminated as of March 30, 1990, he wasn't actually terminated from employment until May, 1990, by Mr. Mogle," (R & R at 7–8) (emphasis in original). This assertion, however, is contradicted by Winnemore's own prior statements. In a letter dated April 13, 1990 from Winnemore to Mogle, Winnemore states, "As you know, Fred Share has terminated my employment as of March 30, 1990." (Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. A).

Furthermore, the EEOC was intimately aware that Winnemore was terminated on March 3, 1990. EEOC investigator Ted Boustedt wrote a letter to Winnemore on December 30, 1991, stating:

> Upon careful review and analysis of the documentation contained in the case file, we have determined that the date of the alleged violation is 3/30/90 ... I will continue the negotiation ('conciliation') process unless you do file a private suit. It may be argued that the final word on your status did not occur until May, but it appears you were notified of termination on or about 3/30/90, and that became the effective date.

(D.'s Mot. for Summ. J., Ex. F). Despite this recognition, the EEOC elected to proceed with the case, alleging that Winnemore's date of termination was in May 1990, and continued with the case for six more years until this Court determined that the uncontrovertible evidence demonstrated Winnemore's termination date was March 30, 1990.

The Magistrate further asserted that even if Mogle did not terminate Winnemore, the EEOC presented competent evidence that Mogle was "intimately involved" in Share's decision to change Winnemore's compensation package. (R & R at 8). However, the only evidence presented by the EEOC was

Winnemore's speculation that Mogle may have been involved in that decision. Specifically, Winnemore stated, "[Share] said that the other branches were going to go as independent contractors ... It wasn't his decision that this was going to happen in my office. But at this time whoever made the decisions, I *assume* it was Mogle, said this is the way it's going to be." (Winnemore Dep. at 58) (emphasis added). It is clear that the EEOC was not substantially justified in bringing a discrimination case based on the fact that Mogle had terminated Winnemore in May 1990, when the EEOC itself was keenly aware that Winnemore had been terminated by Share on March 30, 1990.

Because the one allegedly discriminatory statement about Winnemore being "over the hill" could not be attributed to the person who made the decision to terminate Winnemore, the EEOC was plainly unjustified in alleging a direct case of discrimination. *See Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1226 (11th Cir.1993). This Court also ruled in the Summary Judgment Order that the EEOC could not make out a circumstantial case of discrimination. The Court first observed that the EEOC could not establish a *prima facie* case of discrimination and further opined that even if the EEOC had established a *prima facie* case, it could not prove that CDI's legitimate business reasons were pretextual. The Magistrate apparently overlooked the fact that this Court found that the EEOC failed to establish a *prima facie* case and instead analyzed whether the EEOC had colorable evidence establishing pretext.

In determining that the EEOC was not substantially justified, this Court finds it important to note that the EEOC failed to establish even a *prima facie* case of discrimination. *See Poole,* 779 F.Supp. at 1563. A plaintiff may establish a *prima facie* case of discrimination under the ADEA by establishing that (1) he is a member of the protected class; (2) adverse employment action was taken against him; (3) he was replaced by a person outside the protected class; and (4) he was qualified for the position for which he was rejected. *See Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir.1989). In a re-

duction in force case, like the instant case, the plaintiff must also establish that there is "evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077 (11th Cir. 1990). While the Magistrate simply takes as true the assertion that 26 year old Fruits replaced Winnemore, this Court observed in the Summary Judgment Order that the EEOC did not have competent evidence to support this assertion and that the assertion was, in fact, directly contradicted by admissible evidence. Specifically, the Court stated, "Plaintiff contends that Timothy Fruits replaced Winnemore. Plaintiff bases that allegation on deposition testimony of Mr. Winnemore and Dominick Cipully.[1] However, the assertions made by both of them are based on speculation and hearsay and refuted by direct testimony capable of being admitted into evidence."[2] (Summ. J. Order at 8–9). The Court concluded that the EEOC simply had not proffered any competent evidence showing that Winnemore was replaced by someone outside the protected class. In addition, the Court found that the EEOC could not establish that there was evidence in the record from which a fact finder could reasonably conclude that the employer intended to discriminate. The only evidence of discriminatory animus was Mogle's statement. The Court observed that because Mogle was not involved in Winnemore's termination, it could not be evidence that his termination was a product of invidious discrimination. *See Trotter v. Board of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1453–54 (11th Cir.1996). Again, the EEOC was well aware that Winnemore was not terminated in May by Mogle.

In addition, the Court found that the EEOC could not prove CDI's proffered business reason to be pretextual. CDI presented evidence that due to the Company's financial problems, many employees, young and old, were terminated. (*See* Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. G (CDI Personnel Roster)). The EEOC simply failed to rebut Defendants' evidence that CDI was losing money and that both young and old workers were laid off in 1990.

The Court cannot agree with the Magistrate's conclusion that the EEOC was substantially justified in pursuing this case. Knowing that it had no direct evidence of discrimination and knowing that it had no competent evidence even to establish a *prima facie* case of discrimination, the EEOC pursued this case for six years and made statements to the Court in direct contradiction of the conclusions of its own investigator. Denying Defendants attorney's fees in this case would contravene the EAJA's policy "to remov[e] the financial barrier faced by individuals contesting inappropriate governmental action [and] to encourage government agencies to act in an equitable and responsible manner toward citizens and re-

---

**1.** Dominick Cipully testified in his February 3, 1997 deposition as follows:

Q: Why do you say that you thought that they sent [Fruits] down to take Al [Winnemore's] place? What do you base that on?

A: What I base it on?

Q: Yes.

A: The turn of events that happened that same day, that night, when Al called me up. Al called me up to give me the keys of the shop. And he says: They fired me. And I said: You're kidding. And he says: This is the first time I have ever been fired in my life. They hired someone younger to take my place. And I didn't say nothing to Al. I just looked at him. He says: Will you help me take the stuff to my house? I said: Sure I got no problem with that. And I drove him home and that was it. (Dominick Cipully Dep. at 16–17). Dominick Cipully also testified that Tim Fruits only worked at CDI for a couple of weeks.

**2.** Timothy Fruits testified in his August 23, 1997 deposition as follows:

A: Basically, [I] went down just to help them clean it up, help Dominick—the place looked like a dump when I rolled in there, honestly, and just to help Dominick get things straightened back up and the yard cleaned up down there, as you would call it.

\* \* \* \* \* \*

Q: To your understanding, though, were part of your duties eventually to also be a salesperson there with Complete Dewatering?

A: No, no not that I recall at all.

(Timothy Fruits Dep. at 14 & 18). Steve Mogle and Fred Share also testified that Fruits was only there on a temporary basis to clean up the office and that Fruits was not hired to be a salesperson and indeed did not have the qualifications to become one.

frain from unreasonable and vexatious litigation." *Taylor v. Heckler*, 778 F.2d 674, 676 (11th Cir.1985).

## B. The EAJA is Applicable to Cases Brought under the ADEA

■■ Because the Magistrate found that the EEOC was substantially justified, he declined to reach the issue of whether the EAJA applies to actions brought pursuant to the ADEA. The EAJA's provisions governing attorney's fees apply to all civil cases "[e]xcept as otherwise specifically provided by statute." 28 U.S.C. § 2412(d)(1)(A). From the text and legislative history of the EAJA it is clear that, with respect to cases involving the United States, the EAJA was meant to replace the "American Rule" and its common law exceptions, which provide that each party pays its own attorney's fees unless the case was litigated in bad faith. *See Chambers v. NASCO*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The statute, however, was not meant to supplant existing statutory attorney's fees schemes that would otherwise determine the standards under which attorney's fees could be assessed against the United States. For example, Title VII of the Civil Rights Act of 1964 ("Title VII") provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the *Commission and the United States* shall be liable for costs the same as a private person." 42 U.S.C. § 2000e–5(k) (emphasis added). The Supreme Court has interpreted this provision to allow prevailing Defendants to recover attorney's fees only where the Plaintiff's suit was frivolous. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The attorney's fee provision of Title VII clearly contemplates and addresses the situation in which a prevailing private defendant brings suit against the government. In those cases, the government, as any private plaintiff, is liable for attorney's fees if its suit was frivolous. Because Title VII contains an express provision providing for attorney's fees from plaintiffs or defendants (including the United States), Courts have held that the EAJA's attorney's fee provisions do not govern cases brought by or against the United States under Title VII. Rather Title VII's own fee-shifting provisions control. *See, e.g., EEOC v. Kimbrough Inv. Co.*, 703 F.2d 98, 103 (5th Cir.1983).

■■ The EEOC urges the Court to adopt the same conclusion with regard to the ADEA. However, the two circuits to address the issue of whether the EAJA's attorney's fees provisions apply to suits under the ADEA involving the United States have squarely held that the EAJA does apply. *See EEOC v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 881–83 (7th Cir. 1994); *EEOC v. Clay Printing Co.*, 13 F.3d 813, 817–18 (4th Cir.1994). These courts draw a sharp distinction between the remedial scheme contained in Title VII and the remedial scheme incorporated into the ADEA. While the ADEA does not contain its own remedial scheme, it incorporates by reference the remedies provided in the Fair Labor Standards Act ("FLSA"), which provides in pertinent part, "the court ... shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). The statute is silent as to the provision of attorney's fees to prevailing defendants. *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1437 (11th Cir.1998) ("[T]he FLSA does not address whether, or under what circumstances attorney's fees should be awarded to a prevailing defendant."). Thus, in cases brought pursuant to the ADEA or FLSA, courts have applied the common law to prevailing defendants, allowing them to recover only if the plaintiff acted in bad faith. *See, e.g., id.* (ADEA); *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542–43 (11th Cir.1985) (FLSA). As asserted above, the EAJA was meant to supplant the common law in civil cases involving the United States. It follows, therefore, that the attorney's fee scheme provided in the EAJA should apply to prevailing defendants in ADEA cases involving the United States. Thus, to the extent that the ADEA does not

"specifically provide[ ]" otherwise, prevailing defendants can recover attorney's fees from the government pursuant to the EAJA. *See Clay Printing,* 13 F.3d at 818 ("Until another statute 'specifically provide[s]' that ADEA defendants cannot get such fees from the United States, the plain language of the EAJA will continue to control.").

Another distinction between Title VII and the ADEA is that Title VII specifically provides for attorney's fees from the United States whereas the ADEA is silent as to the United States. Thus, were this Court to hold that the EAJA did not apply to actions involving the government under the ADEA, it is unclear whether a prevailing defendant could recover attorney's fees from the government at all. The EAJA's purpose is to create a statutory basis for attorney's fees from the United States where there was none before. *See generally* H.R.Rep. No. 1418, 96th Cong., 2d. Sess., 1980 U.S.C.C.A.N. 4984. The "substantially justified" standard was meant to offset "[t]he deterrent effect created by [a private party's] inability to recover fees against the government" and prevent "precedent ... established on the basis of an uncontested order rather than the thoughtful presentation and consideration of opposing views." *Id.* There is simply no indication that the EAJA meant to exempt prevailing ADEA defendants from its broad application.[3]

### Conclusion

The Court has found that (1) the EEOC was not substantially justified in initiating and continuing to litigate this case and (2) the EAJA's substantially justified standard governs this case. The Court will remand the case to the Magistrate for a determination of (1) whether Defendants meet the technical requirements of 28 U.S.C. § 2412(d)(2)(B) and (2) if so, the specific amount of attorney's fees to be awarded to Defendants.

3. While the Court concludes that the EAJA, including the provision containing the "substantially justified" standard, is generally applicable to ADEA cases, in order for the "substantially justified" standard to be used in the instant case, Defendants must meet certain technical requirements: at the time the EEOC filed the instant

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that the March 12, 1998 Report and Recommendation of the Honorable William C. Turnoff, U.S. Magistrate–Judge, be and the same is hereby, REVERSED in its entirety. It is further

ORDERED and ADJUDGED that the above-styled case be, and the same is hereby, REMANDED to the Honorable William C. Turnoff, U.S. Magistrate–Judge, for a determination of (1) whether Defendants meet the technical requirements of 28 U.S.C. § 2412(d)(2)(B) and (2) if so, the specific amount of attorney's fees to be awarded to Defendants.

action, CDI's and Wellpoints' net worth could not exceed $7,000,000 (individually) and each company had to have less than 500 employees. 28 U.S.C. § 2412(d)(2)(B). Accordingly, the Court will remand to the Magistrate for a determination of whether Defendants meet these technical requirements.