NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0498n.06

Nos. 11-6426/27

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 17, 2013*

DEBORAH S. HUNT, Clerk

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

      Plaintiff-Appellant/Cross-Appellee,

v.

MEMPHIS HEALTH CENTER, INC.,

      Defendant-Appellee/Cross-Appellant.

_____/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE

BEFORE:    CLAY and WHITE, Circuit Judges; and HOOD, District Judge.[*]

      **CLAY, Circuit Judge.**  Plaintiff Equal Employment Opportunity Commission ("EEOC")

appeals the district court's order, granting a partial award of attorney's fees and costs to Memphis

Health Center, Inc., ("MHC"), pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C.

§ 2412(d). Defendant MHC cross-appeals, arguing that the district should have granted the full

amount of attorney's fees and costs.

      For the reasons set forth below, we **AFFIRM** in part and **REVERSE** in part the district

court's judgment, and **REMAND** for further proceedings consistent with this opinion.

_____

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

## BACKGROUND

### A.    Factual Background

MHC is a nonprofit, federally-qualified community health center, providing medical services to low-income and uninsured patients in the Memphis, Tennessee area. Rita Smith, born January 21, 1952, began working for MHC as a dental assistant with ten years' experience in July 1983. During her more than 25-year career with MHC, Smith worked primarily in a satellite office and performed various administrative and support functions. Smith generally received positive ratings on formal performance evaluations.

Smith was laid off on August 15, 2007, because MHC was downsizing, and was provided a severance package. Smith filed an internal grievance challenging her termination. She requested that some consideration be given to her long years of service and alleged that she was laid off because an MHC doctor favored another (older but recently hired) dental assistant who worked at MHC's main office. The grievance was denied. Smith attempted to file a charge of discrimination with the EEOC during this time, asserting that she was discharged in retaliation for taking leave and seeking worker's compensation after an on-the-job injury, and because the MHC doctor favored the other dental assistant who was retained. An EEOC intake officer advised Smith to contact him if she learned that the retained dental assistant was under 40 years old (which she was not), or if a less qualified white, male, or younger person was hired for an open position with MHC to which Smith had applied. Smith then continued through the internal grievance process and appealed to MHC's Board of Governors in September 2007, claiming that "[h]ad [she] not sought . . . worker's comp

for [her] on-the-job injuries, [she] would still be employed by [MHC] today." (R. 93, Ex. 6.) The appeal was also denied.

During her severance period, Smith accepted a lower-paying position at MHC as a call center operator. Her supervisor at the time, William McInnis, encouraged Smith to apply for a dental assistant position that arose in January 2008. McInnis, and several other MHC employees, asserted that it was the company's policy to hire qualified current employees for openings before advertising it to outside candidates and that MHC usually did so without interviewing the employee. However, when Smith applied for the position, two outside candidates—including Deborah Phillips-Tolliver, who is almost seven years younger than Smith—applied as well. Smith was also advised that she would have to interview for the position in the near future, but received indications that she would not learn of the interview appointment until the day it was to take place.

Smith was called in to interview on what happened to be MHC's "casual Friday;" thus, she was unintentionally dressed in jeans and tennis shoes for the interview. Smith also was not prepared for the interview inasmuch as she did not bring her resume; however, MHC's interviewers similarly did not have Smith's personnel file during her interview. During the interview, Smith was asked why she did not seek another dental assistant position after being laid off, and she responded that she believed God told her to stay at MHC. The interviewers' evaluation forms articulated a concern that Smith did not take the interview seriously or present herself professionally. Despite receiving some positive evaluations, Smith overall ranked lower than Tolliver on the interviewers' evaluation forms. Moreover, Dr. Oscar Webb, the final decision-maker, learned that doctors who once worked with Smith disliked her work style. Consequently, MHC hired Tolliver because"Tolliver came prepared

for the interview, responded to questions appropriately, would make a better fit with the department, and would not create friction with the other members of the department's staff." (R. 94, at 4.)

On February 20, 2008, Smith filed a charge with the EEOC, which determined that it did not have reasonable cause to believe that MHC laid off Smith because of her age. However, the EEOC did find reasonable cause that MHC's failure to rehire Smith for the open dental assistant position was based on her age.

**B.       Procedural History**

On September 30, 2008, the EEOC filed an action against MHC alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*. Specifically, the EEOC alleged that MHC failed to rehire Smith: 1) because of her age (56 years old); and 2) in retaliation for Smith engaging in protected activity (filing grievances after being laid off).

On July 12, 2010, MHC filed a motion for summary judgment, which was granted by the district court on September 10, 2010. The court found that the EEOC did not establish a *prima facie* case of age discrimination because, as a matter of law, the new hire, Tolliver, was not "substantially younger" than Smith because there was only a seven-year age gap between the two. Moreover, MHC had a legitimate nondiscriminatory reason for not rehiring Smith and the EEOC failed to establish that the reason was pretextual. The district court further found that the EEOC failed to establish a *prima facie* case of retaliation because Smith never asserted age discrimination in her grievances, and there was no evidence that Smith engaged in any protected activity. The EEOC did not appeal.

Following summary judgment, MHC filed a motion in the district court seeking an award of attorney's fees and costs, totaling $70,389.83, pursuant to the Equal Access to Justice Act ("EAJA"),

4

28 U.S.C. § 2412. The EEOC argued that the motion should be denied because: 1) this Court has not decided whether the EAJA applies to the ADEA; 2) to the extent it does, the only applicable standard for reviewing ADEA claims should be "bad faith" and not the EAJA's "substantially justified" standard; and 3) assuming, *arguendo*, the substantially justified standard applies, the EEOC's position as a whole was substantially justified.

The district judge referred the motion for attorney's fees and costs to a magistrate judge, and the magistrate judge recommended that: 1) the EAJA applied to the ADEA; 2) only the discrimination claim was substantially justified after conducting a claim-by-claim analysis; and 3) fifty percent of the attorney's fees should be awarded to MHC for defending the retaliation claim. The magistrate judge relied on persuasive authority from the Fourth and Seventh Circuits to hold that the EAJA's "substantially justified" standard applies to the ADEA. The magistrate judge then, recognizing a split among courts, adopted a claim-by-claim analysis after determining that "the claims [were] not so complex or closely intertwined such that the court cannot examine the claims separately . . . ." (R. 94, Report & Recommendation, 14–15.) The magistrate judge reasoned that despite losing at summary judgment, the EEOC had a reasonable basis in law and fact to assert the age discrimination claim because there was no established rule in this circuit regarding a seven-year age difference. Moreover, the EEOC had a reasonable basis in law and fact to support its pretext argument based on the circumstances surrounding Smith's interview, her performance record with MHC, and the alleged policy of hiring internally.

The magistrate judge found that the retaliation claim, however, was not substantially justified because the grievances, even when construed liberally, failed to assert any claims of age

discrimination. Consequently, there was no protected activity in which Smith engaged to substantiate a retaliation claim. The magistrate judge then awarded fifty percent of the fees and costs because half of the claims advanced by the EEOC were not substantially justified and because the court could not identify, based on the billing records, the attorney's fees and costs spent on each claim.

The EEOC timely objected to the magistrate judge's report and recommendation, and MHC replied, asserting that the full amount of fees should be awarded and the government's position as a whole was unjustified.[1] The district court adopted the magistrate judge's report and recommendation, granting in part and denying in part MHC's motion for attorney's fees and costs. In November 2011, the EEOC timely appealed, finding error with the court's application of the EAJA, use of a claim-by-claim analysis over a holistic view, determination that the retaliation claim was not substantially justified, and the court's seemingly arbitrary award of fifty percent of fees and costs. MHC timely cross-appealed, asserting that the district court erred in failing to grant a full award of attorney's fees and costs. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

---

[1]MHC has waived any argument that the age discrimination claim was not substantially justified because it failed to object to the magistrate judge's findings on this point. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012). However, it has not waived the related but distinct argument that the government's position, if taken as a whole, was not substantially justified because this argument was specifically advanced in its reply to the EEOC's objection to the magistrate judge's finding.

## DISCUSSION

## I.    APPLYING THE EAJA

### A.    Standard of Review and Applicable Law

Whether the EAJA applies to the ADEA is an issue of statutory interpretation that this Court reviews *de novo*. *See Turner v. Comm'r Soc. Sec.*, 680 F.3d 721, 723 (6th Cir. 2012).

Generally, under the "American Rule," the prevailing party in a litigation may not recover his fees from the losing party, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975), unless there is an express statutory authorization for fee-shifting, *id.* at 249–50, or a narrow common law exception that applies, *id.* at 257–59. The EAJA is an express statutory authorization for fee shifting that waives sovereign immunity and permits recovery from the government to eliminate financial disincentives for private parties to challenge unjustified government action and thereby deter unreasonable exercises of government authority. *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163–64 (1990). The EAJA contains two fee-shifting provisions for awards in court proceedings.[2] *Scarborough v. Principi*, 541 U.S. 401, 406–07 (2004).

The first provision permits an award of attorney's fees to a prevailing private party, "unless expressly prohibited by statute," "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b). Subsection (b) does not create any substantive right to attorney's fees other than what is already available under the common law or another applicable statute. The second provision,

---

[2]The EAJA also provides for an award of attorney's fees in an "adversary adjudication" before an administrative agency under the same circumstances as § 2412(d)—when the government's position is not substantially justified. 5 U.S.C. § 504(a)(1).

however, requires an award of attorney's fees to a prevailing private party, "except as otherwise specifically provided by statute," "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* § 2412(d)(1)(A). Thus, in contrast to subsection (b), subsection (d) by its plain language creates a substantive right to attorney's fees, where not provided for by another statute, if, among other conditions, the government's position was not substantially justified. *See Jean*, 496 U.S. at 155, 158.

**B.    Analysis**

Whether the EAJA applies to the ADEA is an issue of first impression for this Court. The EEOC argues that, because the ADEA contains its own fee-shifting rule that specifically provides for an award to a prevailing plaintiff from a defendant, subsection (d) does not apply. Rather, the EEOC submits, only subsection (b) applies to permit a prevailing defendant to recover under the common law "bad faith" exception. However, subsection (d) applies where the suit lies solely against an agency of the United States, *Scarborough*, 541 U.S. at 406–07, and unless "otherwise specifically provided [for] by statute," 28 U.S.C. § 2412(d)(1)(A). Because the present case is advanced by the EEOC against a private party, the only basis for precluding application of subsection (d) would be in the language of the ADEA itself. That is, the ADEA must specifically provide for or preclude an award to a prevailing defendant to bar application of subsection (d).

The EEOC unpersuasively argues that by negative implication, the ADEA specifically precludes an award of attorney's fees to prevailing defendants under subsection (d). Despite mirroring Title VII in almost every other respect, the ADEA distinctly incorporates by reference a completely different remedial scheme, found under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201, *et seq*. *See* 29 U.S.C. § 626(b). The FLSA states in relevant part that "the court . . . shall, in addition to any judgment awarded to the plaintiff . . ., allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id*. at § 216(b). By adopting this language, the ADEA notably departs from Title VII—the ADEA mandates fee awards specifically for prevailing plaintiffs while Title VII permits district courts in their discretion to award fees to either prevailing plaintiffs or defendants and specifically provides for the EEOC to be liable to the same extent as a private person. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416, 422 (1978) (holding that prevailing defendants in Title VII cases may be awarded fees where claims were "frivolous, unreasonable, or groundless"). Notably, the ADEA is silent on whether fees may be awarded to prevailing defendants. The EEOC argues that the absence of any language regarding an award to defendants, the statute's specific mandate for fee awards to a prevailing plaintiff, and Congress' conscious decision to depart from the remedial scheme of Title VII, demonstrate that the ADEA *specifically* precludes awarding fees to a prevailing defendant.

However, any negative implication must give way to express statutory language. Subsection (d) applies absent specific statutory language to the contrary. Though § 216(b) does not provide for fee awards to defendants, *Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994) (holding that defendants may not recover attorney's fees in defending FLSA actions), it does not follow that § 216(b) bars default fee-shifting statutes such as the EAJA from filling this void. *Cf. Sullivan v. Hudson*, 490 U.S. 877, 891–92 (1989) (rejecting any negative implication from the express coverage of only adversary agency adjudications by the EAJA, and holding that the EAJA also permits a fee award for non-adversary remand proceedings before the agency). Since the ADEA is silent on the

issue of fee awards to prevailing defendants, this Court has applied the common law bad faith exception to fill the void when analyzing whether a prevailing defendant should be awarded fees against a private plaintiff. *See Morgan v. Union Metal Mfg.*, 757 F.2d 792, 796 (6th Cir. 1985) (affirming fee award to the defendant employer in age discrimination case where the plaintiff maintained the action after rejecting a reasonable settlement offer).

Because the government is a party here, it should follow that the EAJA applies to the ADEA because the former statute fills the void in the latter, providing prevailing defendants with a statutory right to attorney's fees. *See O & G Spring*, 38 F.3d at 883; *EEOC v. Clay Printing Co.*, 13 F.3d 813, 817 (4th Cir. 1994). The EEOC's argument for the ADEA to be treated the same as Title VII attempts to ignore the material distinctions in the two statutes' language. Title VII is a "prevailing party" fee-shifting statute, *see Scarborough*, 541 U.S. at 422, and has a specifically outlined basis for awarding fees to a prevailing defendant. *See Christiansburg*, 434 U.S. at 416. Title VII is a prime example of what subsection (d) means by "otherwise specifically provided by statute." Unlike Title VII, the ADEA does not provide a basis for defendants to recover fees. The ADEA is completely silent on this point and, thus, we find that subsection (d)'s substantial justification standard applies.

Accordingly, the district court's application of the EAJA to the EEOC in ADEA cases was proper.

## II.     ATTORNEY'S FEE AWARD

### A.     Standard of Review

This Court reviews the district court's award of attorney's fees for abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552, 563 (1988). An abuse of discretion occurs when the district court has relied on "clearly erroneous findings of fact, when it improperly applies the law or uses an erroneous legal standard." *Phelan v. Bell*, 8 F.3d 369, 373 (6th Cir. 1993). Factual findings are reviewed for clear error, while legal conclusions are reviewed *de novo*. *Begley v. Sec'y of Health & Human Servs.*, 966 F.2d 196, 198 (6th Cir. 1992). Specifically, issues of statutory interpretation are reviewed *de novo*. *See Turner v. Comm'r Soc. Sec.*, 680 F.3d 721, 723 (6th Cir. 2012).

### B.     Analysis

Section 2412(d) of the EAJA requires the government to pay a fee award to a prevailing party who meets other statutory requirements,[3] unless "the position of the [government] was substantially justified." To be "substantially justified," the government must prove that its position has a reasonable basis both in law and fact. *Pierce*, 487 U.S. at 563–64. However, what the "position" of the government actually consists of has proven to be less clear. Before 1990, several courts segmented cases during the substantial justification determination for awarding fees. *See, e.g.*, *Smith v. Bowen*, 867 F.2d 731, 735 (2d Cir. 1989); *Matthews v. United States*, 713 F.2d 677, 684 (11th Cir. 1983); *Ellis v. United States*, 711 F.2d 1571, 1576 (Fed. Cir. 1983); *Goldhaber v. Foley*, 698 F.2d

---

[3]The EAJA has other requirements that are not at issue here, including "that the claimant be a prevailing party" as defined by § 2412, "that no special circumstances make an award unjust," and "that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement." *Jean*, 496 U.S. at 158 (internal quotation marks omitted).

193, 196–97 (3d Cir. 1983). However, the *Jean* Court held that only one threshold determination was required to render the government liable for fees in subsequent fee litigation. 496 U.S. at 159. The Court found that "the position of the United States," phrased in the singular, supported "treating a case as an inclusive whole, rather than as atomized line-items." *Id.* at 161–62. The threshold determination, which could also consider the government's pre-litigation conduct, was meant to cover the cost of all phases of civil litigation addressed by the statute. *Id.* at 166.

Courts are split on whether the position of the government compels all claims to be grouped for the analysis, permits a claim-by-claim determination for substantial justification, or permits some hybrid of the two. While acknowledging that *Jean*'s holding was limited to the grouping of various stages of litigation, some courts have read *Jean* to discourage atomization of the various claims advanced in a civil case. *See Roanoke River Basin Assoc. v. Hudson*, 991 F.2d 132, 138–39 (4th Cir. 1993) ("[W]e rely on *Jean* as directing a more broadly focused analysis that would reject the view that *any* unreasonable position taken by the government . . . automatically opens the door to an EAJA fee award."). Contrast the D.C. Circuit, which does not read *Jean* to preclude a claim-by-claim analysis that completely segments the substantial justification determination. *See Tripoli Rocketry Ass'n, Inc. v. ATF*, 698 F. Supp. 2d 168, 175 (D.D.C. 2010) (relying on *Cinciarelli v. Reagan*, 729 F.2d 801, 810 (D.C. Cir. 1984)).[4] The D.C. Circuit reasoned:

> [I]t cannot be the case that Congress intended that a party who prevails on an essential ground of a petition to set aside government action cannot recover the

---

[4]It is worth noting that *Jean* cites favorably to *Cinciarelli* as the latter case applied the rule later established in *Jean* (viewing the litigation as an inclusive whole to automatically award fees for the EAJA litigation portion where the position on the merits was unjustified) but did so only after conducting a claim-by-claim analysis for the threshold determination. *See Jean*, 496 U.S. at 163.

congressionally contemplated fees because the government's action was substantially unjustified on only one of several possible bases. Virtually any government action is either grouped with other actions or is a component of some greater action. Presumably the government is usually substantially justified on most of its actions. If a litigant who has successfully challenged a government action as substantially unjustified and achieved a complete victory in terms of the relief prayed cannot recover EAJA fees because of this well-nigh universal grouping, then Congress's enactment of the EAJA becomes a virtual nullity.

*Air Trans. Ass'n of Canada v. FAA.*, 156 F.3d 1329, 1332 (D.C. Cir. 1998).

And still, other courts conduct a preliminary claim-by-claim analysis and then weigh the determinations together to assess the government's overall position. *See, e.g.*, *Gatimi v. Holder*, 606 F.3d 344, 350 (7th Cir. 2010) (denying fee award where the government's position was justified on the more prominent issue, despite being unjustified on the other); *United States v. Jones*, 125 F.3d 1418, 1429 (11th Cir. 1997) ("When the defendant is the prevailing party on each intertwined claim, and one claim is substantially justified, but the other is not, it would be unfair not to reimburse defendants for the EAJA fees needed to combat the whole case presented by the United States."); *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 131 (3d Cir. 1993) ("[A] district court must evaluate every significant argument made by an agency . . . to determine if the argument is substantially justified. . . . This is necessary to permit [an appellate court] to review a district court's decision and determine whether, *as a whole*, the government's position was substantially justified.") (emphasis in original).

Though we have yet to express a view in an EAJA case on what "the position" of the government means, we have made clear in related circumstances that this language precludes the D.C. Circuit's claim-by-claim analysis that segments the substantial justification determination. *See*

*United States v. Heavrin*, 330 F.3d 723, 730 (6th Cir. 2003).[5] We find *Heavrin* instructive; in *Heavrin*, this Court relied on *Jean* and the Fourth Circuit in *Roanoke* to conclude that the "position" of the government under the EAJA requires a holistic determination of substantial justification instead of viewing the case as "atomized line-items" and, thus, held that the Hyde Amendment similarly precluded a count-by-count analysis in criminal cases. *Id.*

The district court in the instant case conducted a segmented determination similar to the one done by the D.C. Circuit. Though it may be debated whether this approach is proper under *Jean*, our decision in *Heavrin* compels a finding of error. However, while part of the government's case may have merit, it is still plausible that its position as a whole lacks substantial justification. *Id.*; *see, e.g.*, *Jones*, 125 F.3d at 1429; *Hanover*, 989 F.2d at 131. Upon determining that the position of the government was justified as to the age discrimination claim but not the retaliation claim, the court should have determined what impact that dichotomy had on the government's case as a whole. *See id.* at 730–31. The district court should assess, if the two are distinct, which claim is more prominent in driving the case in order to make the substantial justification determination, *see Gatimi*, 606 F.3d at 350, or if the claims are sufficiently intertwined legally and factually that an insubstantial justification as to one renders the entire overall position unjustified, *see Jones*, 125 F.3d at 1429. In any event, the district court should perform an analysis to determine whether the government's

---

[5]*Heavrin* dealt with the Hyde Amendment, which tracks the "position of the government" language of the EAJA and explicitly states it is subject to the procedures and limitations of the EAJA. Consequently, courts rely on the meaning of the EAJA to inform their analysis under the Hyde Amendment. *Heavrin*, 330 F.3d at 730; *see also United States v. Claro*, 579 F.3d 452, 457 (5th Cir. 2009) (collecting cases).

position as a whole was substantially justified to make the threshold determination for awarding fees under the EAJA.[6]

**CONCLUSION**

Since the district court failed to complete the analysis, we remand the case for the district court to assess whether the EEOC's position was, as a whole, substantially justified.  *Cf. Heavrin*, 330 F.3d at 731.  For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part the district court's judgment, and **REMAND** for further proceedings consistent with this opinion.

---

[6]It is worth noting that once the holistic threshold determination is made and if an EAJA fee award is found to be proper, the amount to be awarded is a completely separate inquiry guided by *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). *See Jean*, 496 U.S. at 161–62.

**HELENE N. WHITE, Circuit Judge,** concurring. The question is whether subsection

2412(d) of the EAJA is applicable to actions brought by the EEOC under the ADEA. I agree with

the majority that it does apply. I write separately to address the EEOC's arguments more fully, and

because the two circuit opinions that have decided the issue included little analysis.

It is undisputed that subsection 2412**(b)** applies to the EEOC in such circumstances and

operates to make it liable for reasonable fees and expenses of attorneys "to the same extent that any

other party would be liable under the common law or under the terms of any statute which

specifically provides for such an award."[7] Subsection 2412(b) applies because its application is not

"expressly prohibited" by the ADEA. Application of subsection 2412(b) to the EEOC renders it

liable for attorney fees to the same extent any other party would be, which, in the context of an

ADEA plaintiff, makes the EEOC liable for attorney fees only if it litigated in bad faith. *Morgan*

*v. Union Metal Mfg.*, 757 F.2d 792, 796 (6th Cir. 1985).

All agree that subsection 2412**(d)** of the EAJA is applicable "[e]xcept as otherwise

specifically provided by [the ADEA]";[8] and all agree that the ADEA incorporates the attorney fee

shifting provisions of the FLSA. Unlike Title VII, which allows for attorney fees for prevailing

defendants in the court's discretion "upon a finding that the plaintiff's action was frivolous,

unreasonable, or without foundation, even though not brought in subjective bad faith," including

---

[7]Prior to the enactment of the EAJA, the common-law exceptions to the American rule that each party to litigation bears its own attorney expenses did not apply to the United States because of its sovereign immunity.

[8]In contrast to subsection (b)'s qualifying language – "Unless expressly prohibited by statute," – subsection (d) uses the phrase "Except as otherwise specifically provided by statute."

when the EEOC is the plaintiff, *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978), the FLSA provides for the award of attorney fees to prevailing plaintiffs only. Thus, the question is whether the FLSA's provision specifically allowing plaintiffs, but not defendants, to receive attorney fee awards should be construed to be a provision that specifically provides that a defendant prevailing against the EEOC should not recover attorney fees under subsection 2412(d).

It is no answer to rely on the simple fact that the FLSA does not provide for attorney fee awards to private defendants because § 2412(d) contemplates an award of attorney fees to a party prevailing against the United States under circumstances where a private party would not be subject to an attorney fee award in favor of the party seeking fees under § 2412(d). That is the very purpose of subsection (d). Subsection (b) permits an award against the government in all cases where a private party would be liable; subsection (d) extends the government's potential liability for attorney fees beyond that applicable to a private party in the same circumstances.

Still, the EAJA contemplates that § 2412(d) will not displace existing fee-shifting provisions, including those under the civil rights laws. This is clear from the language of § 2412(d), the legislative history and the savings provision. Congress expressly qualified the application of § 2412(d) by beginning that subsection with the phrase "[e]xcept as otherwise specifically provided by statute." Further, the legislative history of the EAJA provides:

> [S]ubsection [2412(d)] applies to all civil actions except . . . those already covered by existing fee-shifting statutes. . . . Moreover, this section is not intended to replace or supersede any existing fee-shifting statutes such as . . . the Civil Rights Acts . . . or to alter the standards or the case law governing those Acts. It is intended to apply only to cases (other than tort cases) where fee awards against the government are not already authorized.

17

H.R. Rep. No. 1418, 96th Cong., 2d Sess. 18, reprinted in 1980 U.S.C.C.A.N. 4953, 4997.

Consistent with this legislative history, Congress also enacted a separate savings provision:

> [N]othing in section 2412(d) of title 28, United States Code, as added by section 204(a) of this title, alters, modifies, repeals, invalidates, or supersedes any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States.

Equal Access to Justice Act, Pub. L. No. 96-481, § 206, 94 Stat. 2330 (1980), amended by Pub. L. No. 99-80, § 3, 99 Stat. 186 (1985).

These provisions have led the circuits that have addressed the issue to conclude that subsection 2412(d) does not apply to Title VII actions because Title VII has its own fee-shifting provision. *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 521–22 (4th Cir. 2012); *E.E.O.C. v. Consol. Serv. Sys.*, 30 F.3d 58 (7th Cir. 1994); *Huey v. Sullivan*, 971 F.2d 1362, 1366–67 (8th Cir. 1992); *E.E.O.C. v. Kimbrough Inv. Co.*, 703 F.2d 98, 103 (5th Cir. 1983). Title VII provides:

> (k) Attorney's fee; liability of Commission and United States for costs
>
> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e–5(k). This section does not on its face "otherwise specifically provide" in that it allows for the award of attorney fees to prevailing plaintiffs and defendants, it allows for the United States to be liable for attorney fees, and it does not provide a standard for assessing attorney fees that is different from the EAJA's substantially justified standard. Nevertheless, because the Supreme Court has interpreted § 2000e-5(k) to provide a bifurcated standard for awarding attorney

fees to prevailing parties – presumptive awards for prevailing plaintiffs other than the EEOC, and awards for prevailing defendants only upon a finding that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith," – and § 2000e-5(k) provides that the government is liable for costs the same as a private person, courts have concluded that both the "otherwise specifically provides," and the savings provision exempt Title VII from the application of subsection 2412(d).

The EEOC asserts that the ADEA/FLSA attorney fee shifting provision also "otherwise specifically provides" in that it specifically mandates fees in favor of prevailing plaintiffs and intentionally declines to authorize statutory fees in favor of prevailing defendants. The EEOC argues that § 2412(d) must give way to the legislative judgment that an ADEA plaintiff should not be liable for an ADEA defendant's attorney fees unless the common-law bad-faith exception applies. The EEOC makes its point by analogizing to Title VII. In accordance with congressional intent, Title VII defendants may collect, and Title VII plaintiffs both governmental and private are liable to pay, statutory attorney fees when the plaintiff's position is frivolous. By declining to adopt Title VII's fee-shifting provision for the ADEA and instead adopting the FLSA's provision, Congress expressed its intent that ADEA defendants not be entitled to receive, and ADEA plaintiffs not face the prospect of having to pay, defendants' attorney fees unless the common-law bad-faith exception applies. However, if § 2412(d) is applied to ADEA cases, it creates an anomalous situation that is inconsistent with Congress's approach to fee-splitting under Title VII and the ADEA by making it easier for ADEA defendants to recover attorney fees from the government than Title VII defendants, even though Title VII contemplates attorney fee awards to defendants under limited circumstances

19

and the ADEA makes no provision at all for awarding fees to defendants, relegating them to the common-law bad-faith rule.

This argument is not without force, but it is also not without problems. First, subsection 2412(d) itself requires that the other operative statute otherwise specifically provide, and while Title VII does clearly provide otherwise, the ADEA/FLSA provision arguably otherwise provides by implication only. Second, both the savings provision and the legislative history contemplate that subsection 2412(d) will be inapplicable where another provision authorizes an award of fees and other expenses to a party prevailing in a civil action brought by or against the United States. Unlike Title VII, the ADEA makes no provision for the award of fees to a party prevailing in litigation against the United States. Defendants, even those prevailing in an action brought by the United States, are not authorized to recover fees under the ADEA; and 29 U.S.C. § 633a (1988), which extends the protection against age discrimination to federal employees, does not incorporate the fee shifting provisions of the FLSA. Thus, the ADEA/FLSA provision at issue does not authorize an award of fees to a party prevailing against the United States and therefore by its terms, the savings provision does not disallow the application of subsection 2412(d) to ADEA cases.

It seems a fair inference that in preserving existing fee-shifting provisions against the operation of § 2412(d), Congress was more concerned with raising the threshold for awarding attorney fees to plaintiffs prevailing against the United States than it was with raising the standard the United States must meet in order to avoid paying attorney fees to prevailing defendants. To be sure, application of § 2412(d) to the EEOC in Title VII cases implicates the latter, rather than the former, concern and the courts have concluded nonetheless that § 2412(d) cannot supplant the

20

frivolous standard in favor of the substantially justified standard for awarding fees against the EEOC as plaintiff. However, those decisions rest on the circumstances that Title VII falls within both the "specifically provides otherwise" clause of § 2412(d) and the savings provision's exception for statutes that themselves authorize an award of fees to a party prevailing against the United States. Here, where neither provision applies, it is not clear that Congress's intent in preserving existing fee shifting schemes was directed at ensuring that the EEOC only pay attorney fees in ADEA cases when it proceeds in bad-faith.

This still leaves the question whether the congressional decision to provide for no statutory attorney fees in favor of prevailing defendants in ADEA cases should be construed, for EAJA purposes, to be a provision specifically providing that no fees shall be awarded against the EEOC in cases where a defendant prevails, except under the common-law bad-faith rule. Stated differently, did Congress intend that parties successfully defending against the EEOC in ADEA cases would have the benefit of the substantially justified test and be awarded attorney fees unless the EEOC's position was substantially justified, or be left in the position of all other ADEA defendants who prevail and be awarded attorney fees only if the plaintiff, including the EEOC, proceeded in bad-faith? The question implicates two Congressional concerns – awarding attorney fees to private parties who prevail against the government when the government's position is not substantially justified, and leaving the American rule applicable to ADEA defendants, subject to the common-law bad-faith exception, so as not to discourage or burden the vindication of the interests protected by the ADEA. Because the award of attorney fees under subsection 2412(d) in ADEA cases burdens only the EEOC and no other plaintiffs or defendants; the EEOC is unlikely to be unduly deterred in

21

its mandate to enforce the anti-discrimination laws by the specter of incurring liability for prevailing defendants' attorney fees where its position is determined to be not substantially justified; and Congress intended that private parties successfully defending against United States government claims that are determined to be not substantially justified recover attorney fees unless there is another statutory provision specifically providing otherwise or providing for the application of a different standard for awarding fees against the government, I conclude that the balance favors the conclusion that Congress intended that subsection 2412(d) apply to ADEA claims brought by the EEOC. Thus, I agree with the majority that the district court properly determined that subsection 2412(d) is applicable.