RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 21a0024p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CAROLYN GRIFFITH (19-6395); TIMOTHY HOWARD (19-6396); ROBERT MARTIN (19-6397); PATRICIA LANE RICHARDS (19-6398); REGINA REED (19-6399); ROSS CLAYTON FLEMING (19-6400); TERESA AKERS (19-6401); STEPHEN KIDD (19-6402); ELIZABETH WRIGHT (19-6403); MARGIE LEWIS (19-6412); TOMMY MAYNARD (19-6413); LANA GRESHAM (19-6414); RODNEY JUSTICE (19-6415); MARSHA F. KIDD (19-6419); BENNY COLE (19-6422); MICHAEL CLINE (19-6432); GREGORY SALISBURY (19-6433); EDDIE REED (19-6438); MARGARET COPLEY (19-6439); RANIE COLEMAN (19-6440); JANIE SHEPHERD (19-6441); LENNY NEWSOME (19-6442); JANICE WORKMAN (19-6443); JOANN HOLBROOK (19-6444); BETTY ROBINSON (19-6445); KATHY RAMEY (19-6446); CAROLYN BATES (19-6452); KATHLEEN CAMPBELL CURTIS (19-6453); CHAD SHEPHERD (19-6472); DANNY REED (19-6473); TRACY HANNAH (19-6474); MARTIN GILLESPIE (19-6487); CHESSIE GRAY (19-6488); CLINTON MULLINS (19-6489); ROBERT MUNCY II (19-6490); MARY SEXTON (19-6491); BRENDA STEWART (19-6492); JOHN PERKINS (20-5057); EDD PAIGE (20-5058); MICHELLE MAYNARD (20-5059); DANNY JOHNSON (20-5060); JAMES TAYLOR (20-5061); TERRY SHEPHERD (20-5062); JANET FAYE SKAGGS (20-5063); PATRICIA GAY LEMASTER (20-5064); MARCIA KAY HYLTON (20-5065); JIMMY KILGORE (20-5066); TERESA HINKLE-SPEARS (20-5067); TAMMY SLONE (20-5078); CORA NEACE RUSSELBURG (20-5079); SHERRI LYNN COMBS (20-5080); MARTHA NEACE (20-5106); ELIZABETH ANN WHITE (20-5107); DONNA JEWELL (20-5108); PEGGY WOLFORD (20-5109); SHARON THOMPSON (20-5146); DALE WIREMAN (20-5159),

> Nos. 19-6395 et al.

_Plaintiffs-Appellants_,

_v._

COMMISSIONER OF SOCIAL SECURITY,

_Defendant-Appellee_.

Appeal from the United States District Court for the Eastern District of Kentucky at Pikeville.

Danny C. Reeves, District Judge.

| Sixth Circuit | District Court | Sixth Circuit | District Court |
|---|---|---|---|
| 19-6395: | 16-cv-00101 | 19-6412: | 16-cv-00068 |
| 19-6397: | 16-cv-00111 | 19-6413: | 17-cv-00183 |
| 19-6398: | 16-cv-00200 | 19-6414: | 16-cv-00153 |
| 19-6399: | 16-cv-00241 | 19-6415: | 16-cv-00059 |
| 19-6400: | 16-cv-00281 | 19-6419: | 16-cv-00220 |
| 19-6401: | 17-cv-00031 | 19-6422: | 16-cv-00259 |
| 19-6402: | 17-cv-00035 | 19-6432: | 17-cv-00161 |
| 19-6403: | 17-cv-00020 | 19-6433: | 17-cv-00052 |

David L. Bunning, District Judge.

| Sixth Circuit | District Court | Sixth Circuit | District Court |
|---|---|---|---|
| 19-6438: | 16-cv-00248 | 19-6453: | 16-cv-00163 |
| 19-6439: | 17-cv-00116 | 19-6472: | 17-cv-00005 |
| 19-6440: | 17-cv-00158 | 19-6473: | 16-cv-00375 |
| 19-6441: | 16-cv-00090 | 19-6474: | 18-cv-00122 |
| 19-6442: | 16-cv-00149 | 19-6487: | 18-cv-00033 |
| 19-6443: | 16-cv-00209 | 19-6488: | 17-cv-00262 |
| 19-6444: | 17-cv-00130 | 19-6489: | 16-cv-00130 |
| 19-6445: | 18-cv-00047 | 19-6490: | 16-cv-00062 |
| 19-6446: | 16-cv-00140 | 19-6491: | 16-cv-00212 |
| 19-6452: | 16-cv-00073 | 19-6492: | 16-cv-00077 |

Joseph M. Hood, District Judge.

| Sixth Circuit | District Court | Sixth Circuit | District Court |
|---|---|---|---|
| 20-5057: | 16-cv-00035 | 20-5067: | 16-cv-00287 |
| 20-5058: | 16-cv-00076 | 20-5078: | 16-cv-00298 |
| 20-5059: | 16-cv-00181 | 20-5079: | 16-cv-00128 |
| 20-5060: | 16-cv-00096 | 20-5080: | 16-cv-00184 |
| 20-5061: | 16-cv-00171 | 20-5106: | 17-cv-00006 |
| 20-5062: | 17-cv-00107 | 20-5107: | 16-cv-00272 |
| 20-5063: | 16-cv-00286 | 20-5108: | 16-cv-00233 |
| 20-5064: | 17-cv-00016 | 20-5109: | 16-cv-00130 |
| 20-5065: | 16-cv-00245 | 20-5146: | 17-cv-00169 |
| 20-5066: | 16-cv-00194 | | |

Argued: December 14, 2020

Decided and Filed: February 3, 2021

Before: MOORE, GIBBONS, and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Amy Lishinski, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellants. Jaynie Lilley, UNITED STATES DEPARTMENT OF

JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Amy Lishinski, Daniel S. Volchok, Arpit K. Garg, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., Evan B. Smith, APPALRED LEGAL AID, Prestonsburg, Kentucky, Wolodymyr Cybriwski, Prestonsburg, Kentucky, Derek D. Humfleet, RADEN HUMFLEET LAW, PLC, Lexington, Kentucky, George Piemonte, MARTIN, JONES& PIEMONTE, Decatur, Georgia, Ned Pillersdorf, PILLERSDORF, DEROSSETT & LANE, Prestonsburg, Kentucky, for Appellants. Jaynie Lilley, Charles Scarborough, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

GIBBONS, J., delivered the opinion of the court in which ROGERS, J., joined. MOORE, J. (pp. 23–26), delivered a separate dissenting opinion.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge.  In *Hicks v. Commissioner of Social Security*, a majority of this panel concluded that the government's process for redetermining plaintiffs' eligibility for social security benefits was constitutionally and statutorily deficient.  909 F.3d 786, 791–92 (6th Cir. 2018).  So we remanded the eleven cases that we had consolidated on appeal to three district courts for further proceedings consistent with our opinion.  After remand, those plaintiffs, as well as forty-six other plaintiffs whose cases had been stayed pending a decision in *Hicks*, filed motions for attorney's fees under the Equal Access to Justice Act.  The district courts unanimously denied fees because they concluded that the government's position in the *Hicks* litigation was "substantially justified."  We agree and affirm.

I.

Throughout the 2000s and early 2010s, attorney Eric Conn obtained social security benefits for his clients by "submitting fraudulent reports to the Social Security Administration" and bribing an Administrative Law Judge.  *Hicks*, 909 F.3d at 791–92.  After the government discovered this fraud, the SSA decided to redetermine whether each of Conn's clients (over 1,500 claimants) were actually eligible for disability benefits.  *Id.* at 794.  The SSA held hearings for each of the claimants and allowed them to submit evidence that they were entitled to benefits. *Id.* at 795.  However, the SSA categorically excluded medical reports created by the four doctors with whom Conn had conspired because it had "reason to believe" fraud was involved in the

creation of the reports. *Id.* at 794–95 (citing 42 U.S.C. § 1383(e)(7)(A)(ii)). The claimants were not given the opportunity to challenge the factual finding that there was reason to believe that fraud was involved in the creation of the medical reports. *Id.* After individual hearings before administrative law judges, plaintiffs' claims for disability benefits were denied. *Id.* at 795.

Fifty-seven plaintiffs then filed suit in the Eastern District of Kentucky challenging the exclusion of the medical reports under the Due Process Clause, the Administrative Procedure Act, and the Social Security Act. *Id.* at 796. Judge Amul Thapar, then on the district court, heard seven of these cases and concluded that the exclusion of the medical reports violated the Due Process Clause because plaintiffs were not given the opportunity to challenge the factual finding that there was "reason to believe" fraud had been involved in the creation of the reports. *Id.* Judge Reeves heard three of the cases and held that the government had not violated plaintiffs' due process rights or the APA. *Id.* Judge Hood also heard one of the cases and reached the same conclusion as Judge Reeves. *Id.* This court consolidated these eleven cases on appeal, and the forty-six other cases were stayed pending a decision by this court. *Id.* at 792.

The panel majority held that the exclusion of the reports violated both the Due Process Clause and the APA. *Id.* On the due process claim, the majority held that the balancing test announced in *Mathews v. Eldridge* did not apply because this case involved "minimum due process." *Id.* at 799. Additionally, the majority concluded that, even if *Mathews* applied, the balancing weighed in plaintiffs' favor. *Id.* at 800–04. Therefore, the government had violated plaintiffs' due process rights by refusing to give them the opportunity to challenge the factual finding that fraud had been involved in the creation of the medical reports. *Id.* at 804. On the APA claim, the majority held that the government had failed to comply with the APA's "formal adjudication requirements" and had acted arbitrarily and capriciously by treating cases involving fraud investigated by the Office of the Inspector General (such as plaintiffs' cases) differently than cases involving fraud investigated by the SSA. *Id.* at 804–09. Finally, the panel unanimously agreed that the government had not violated the Social Security Act. *Id.* at 809–13; *id.* at 827 (Rogers, J., concurring in Part II.C).

Judge Rogers dissented because he believed that the government had provided due process and complied with the APA. *Id.* at 813–27 (Rogers, J., dissenting). On the due process

claim, Judge Rogers disagreed with the majority's contention that this case could be decided without invoking *Mathews* and with the majority's application of *Mathews*. *Id.* at 813–23. On the APA claim, he would have held that the government did not have to comply with the APA's formal adjudication requirements. *Id.* at 823–25. He also would have held that plaintiffs had forfeited their arbitrary and capricious claim, and, even if they had not, the government's reason for treating OIG-instigated cases differently than SSA-instigated cases—that OIG cases are typically on a larger-scale—was rational. *Id.* at 825–27.

The panel then remanded the cases to the district courts. On remand, the district courts had to determine whether to remand the cases to the SSA under sentence four or sentence six of 42 U.S.C. § 405(g). *See, e.g.*, *Hicks v. Berryhill*, 392 F. Supp. 3d 784, 788 (E.D. Ky. 2019). The government argued that remand was proper under sentence six, which applies when the court has not issued a substantive ruling on the correctness of the ALJ's decision. *Id.* The district courts unanimously rejected that argument and concluded that the cases should be remanded under sentence four, which applies when "the Commissioner erred in some respect in reaching the decision to deny benefits." *Id.* (quoting *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)).

After remand, plaintiffs filed motions in front of three district court judges for attorney's fees under the Equal Access to Justice Act. *Howard v. Saul*, No. 7:16-cv-051, 2019 WL 5191831, at *3 (E.D. Ky. Oct. 15, 2019) (*Griffith*); *In re: Fee Motions in Various Social Security Cases*, No. 5:16-cv-128 et al., 2020 WL 109808, at *2 (E.D. Ky. Jan. 9, 2020) (*Perkins*); *In re: Fee Motions in Various Social Security Cases*, No. 5:16-cv-130 et al., 2019 WL 6119220, at *1 (E.D. Ky. Nov. 18, 2019) (*Reed*). The relevant issue in the district courts (and in this case) was whether the government's position was "substantially justified." *See, e.g.*, *Griffith*, 2019 WL 5191831, at *3. All three district court judges held that the government's position in *Hicks* was substantially justified and, therefore, denied plaintiffs' motions for attorney's fees. *See, e.g.*, *id.* at *8. Plaintiffs appealed.

## II.

We review a district court's decision denying EAJA fees for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 563 (1988). "To find that the district court abused its discretion,

this court must be firmly convinced that a mistake has been made." *Damron v. Comm'r of Soc. Sec.*, 104 F.3d 853, 855 (6th Cir. 1997) (citing *Pierce*, 487 U.S. at 559). "An error of law is an abuse of discretion." *United States v. Lawrence*, 735 F.3d 385, 405 (6th Cir. 2013).

III.

Before turning to the facts of this case, we first describe the principles governing the award of attorney's fees under the Equal Access to Justice Act. The EAJA carved out an exception to the general rule that each party pays its own attorney's fees. *Scarborough v. Principi*, 541 U.S. 401, 404 (2004). Under the EAJA:

> [A] court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The only issue in this case is whether the government's position in the *Hicks* litigation was "substantially justified." The government bears the burden of proving substantial justification. *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014).

A position is "substantially justified" if the position is "'justified in substance or in the main' – that is justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565. In other words, a position is substantially justified if "a reasonable person could think it correct" and "it has a reasonable basis in law and fact." *Id.* at 566 n.2. This standard envisions that the government's position must be "more than merely undeserving of sanctions for frivolousness." *Id.* at 566. However, it may be "justified even though it is not correct." *Id.* at 566 n.2; *see also Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993) ("While the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong.").

When considering whether the government's position is substantially justified, we focus on the merits of that position.  While "objective indicia" of reasonableness—such as a dissenting opinion, the views of other courts, "a string of losses", or a "string of successes"—may be relevant, it is "the actual merits of the Government's litigating position" that matter most. *United States ex rel. Wall v. Circle C Constr., LLC*, 868 F.3d 466, 471 (6th Cir. 2017) (quoting *Pierce*, 487 U.S. at 569).  Additionally, "[h]ere as in other areas courts need to guard against being 'subtly influenced by the familiar shortcomings of hindsight judgment.'"  *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005) (Roberts, J.) (quoting *Beck v. Ohio*, 379 U.S. 89, 96 (1964)); *see also id.* at 1174 ("[J]ust as discovery of contraband does not establish probable cause, nor an accident negligence, nor poor returns an imprudent trustee, so too a loss on the merits does not mean that legal arguments advanced in the context of our adversary system were unreasonable.").  For that reason, we distinguish between cases in which "the government lost because it vainly pressed a position 'flatly at odds with the controlling case law'" and cases in which "the government lost because an unsettled question was resolved unfavorably."  *Id.* at 1174; *see also Perket v. Sec'y of Health & Hum. Servs.*, 905 F.2d 129, 135 (6th Cir. 1990) ("For the purposes of the EAJA, the more clearly established are the governing norms, and the more clearly they dictate a result in favor of the private litigant, the less 'justified' it is for the government to pursue or persist in litigation." (quoting *Spencer v. N.L.R.B.*, 712 F.2d 539, 559 (D.C. Cir. 1983))).

We also focus our inquiry on the government's position "as a whole." *Amezola-Garcia v. Lynch*, 835 F.3d 553, 555 (6th Cir. 2016).  The government's whole position includes its arguments made during litigation as well as its pre-litigation conduct. *EEOC v. Memphis Health Ctr.*, 526 F. App'x 607, 614 (6th Cir. 2013), *cited with approval in*, *Amezola-Garcia*, 835 F.3d at 556.  Even if "part of the government's case may have merit, it is still plausible that its position as a whole lacks substantial justification." *Id.* at 615.  Conversely, even if the government's argument on a less-prominent claim was not reasonable, its position as a whole may have been substantially justified. *Accord id.*  When confronted with a situation in which some arguments were reasonable and some were not, we must determine "what impact that dichotomy had on the government's case as a whole" by looking at which claim was "more prominent" and whether

the claims were "sufficiently intertwined legally and factually that an insubstantial justification as to one renders the entire overall position unjustified." *Id.*

IV.

We these principles in mind, we turn now to the case at hand. In *Hicks*, the government excluded evidence created by four doctors with whom Conn had conspired because it found that there was "reason to believe" that fraud was involved in the creation of that evidence. *Hicks*, 909 F.3d at 791–92. The government did not give plaintiffs the opportunity to challenge that factual finding. *Id.* Plaintiffs argued that the Due Process Clause, the Administrative Procedure Act, and the Social Security Act required the government to allow them to challenge the factual finding that fraud was involved in the creation of the evidence. A majority of this panel agreed with plaintiffs on the first two claims, although the panel unanimously agreed with the government on the Social Security Act claim. After the cases were remanded to the district courts, the government argued that the district courts should remand the cases to the Social Security Administration under sentence six of 42 U.S.C. § 405(g) instead of sentence four. The district courts disagreed and remanded the cases under sentence four.

To determine whether the government's position was reasonable, we consider the government's argument on the due process claim, APA claim, and sentence six/sentence four remand issue individually. Then we consider the reasonableness of these arguments together, alongside "objective indicia of reasonableness," such as Judge Rogers's thoughtful dissent, the fact that two district courts had agreed with the government in *Hicks*, and the disagreement among jurists in similar cases around the country. These considerations lead us to conclude that the district courts did not abuse their discretion in determining that the government's position was substantially justified.

A.

We first turn our attention to the government's arguments on the due process claim. In *Hicks*, the government maintained that this case was governed by the flexible balancing test articulated in *Mathews v. Eldridge* and that, under that test, the decision not to allow plaintiffs to challenge the factual finding that fraud had been involved in the creation of the medical reports

did not violate due process. Plaintiffs disagreed and argued that this case was not governed by *Mathews* because it involved "minimum due process"; that minimum due process cannot be "balanced away"; and that, even under *Mathews*, the government had violated plaintiffs' due process rights. The panel majority agreed with plaintiffs' position and held that *Mathews* does not apply to cases involving "minimum-due process." *Hicks*, 909 F.3d at 797. For support, the majority cited to "long-standing principles of procedural due process that predate the *Mathews* test." *Id.*; *see also id.* (describing these principles as "immutable"). These principles were primarily derived from three Supreme Court cases: *Greene v. McElroy*, 360 U.S. 474 (1959), *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004). *Id.* The majority also held that even if *Mathews* applied, the government's redetermination procedures were inadequate because the risk of erroneous deprivation was too high, the plaintiffs had a substantial interest in receiving benefits, and the government's interests were not sufficiently compelling. *Id.* at 799–804.

Despite the fact that the panel majority disagreed with the government's argument that the *Mathews* balancing test applied, that argument was reasonable. Contrary to plaintiffs' contention in their current briefing, the government never argued that "minimum due-process protections, including an opportunity to be heard," could be "balanced away." CA6 R.31, Appellant Br., at 23. The government explicitly stated in its reply brief before the original panel that "[t]he *Mathews* test does not, of course, permit 'minimum due process protections [to] be balanced away.'" 17-5206 CA6 R.36, Gov't. Reply Br., at 21. The government's argument was simply that when minimum due process is not provided "the balance will invariably tilt in favor of additional protection" under *Mathews*. *Id.* A reasonable person looking at the state of the law before *Hicks* could have believed that this argument was correct because there was no binding precedent choosing to apply a "minimum due process" analysis instead of a *Mathews* analysis. In fact, there was an unpublished case in this circuit—which the government cited in its briefing before the original panel—applying *Mathews* to a case in which no hearing of any kind was held before or after the government deprived a person of a property interest. *See Henry v. City of Middletown*, 655 F. App'x 451, 462–63 (6th Cir. 2016). It is true—as we recognized in *Hicks*— that the Supreme Court had stated that there was some minimum-level of due process that the government could not take away, but neither the Supreme Court nor this court had ever applied

that statement in a case without also applying *Mathews*.  *See Perket*, 905 F.2d at 135 ("For the purposes of the EAJA, the more clearly established are the governing norms, and *the more clearly they dictate a result in favor of the private litigant*, the less 'justified' it is for the government to pursue or persist in litigation." (emphasis added) (quoting *Spencer*, 712 F.2d at 559)).  Therefore, while the panel majority correctly concluded that *Mathews* did not apply to cases involving minimum due process, a reasonable person could have believed that *Mathews* provided the relevant standard.[1]

Plaintiffs argue that finding that the government's position on this point was reasonable would require us to ignore the principle of stare decisis and "reject *Hicks*."  *See* CA6 R.40, Reply Br., at 11.  However, just because this court cannot (and would not) reject *Hicks*, does not mean that we cannot recognize that a reasonable person could disagree with the result (or, more importantly, could have disagreed with the result before *Hicks* was decided).  It is entirely consistent for this court to say that the holding that *Mathews* does not apply to cases involving minimum due process is binding *and* that the government's argument to the contrary was reasonable.

Even beyond the dispute over whether *Mathews* applied, the government's argument that the *Mathews* balancing test weighed in its favor was also reasonable.  As a starting point, the *Mathews* balancing test is flexible, which weighs in the government's favor.  While plaintiffs are correct that it is possible for the government to take a position that is not substantially justified by a balancing test, a balancing test generally establishes norms that are less well-defined than a bright-line rule.  *See Perket*, 905 F.2d at 135.

---

[1]Plaintiffs argue that our use of the words "immutable" and "long-standing" throughout the opinion demonstrates that the government's position was unreasonable.  We do not agree.  Even if "[s]trong language against the government's position in an opinion discussing the merits of a key issue is evidence in support of an award of EAJA fees," *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004), that strong language is not sufficient, in and of itself, to show that the government's position was unreasonable.  After all, the government did not have the benefit of that language when it was crafting its position.

The *Hicks* majority also did not use the words "immutable" and "long-standing" to refer to factually identical cases but rather to "principles", which are typically broad and could require different results in different cases.  *Hicks*, 909 F.3d at 797.  For example, there is, of course, an immutable principle in this country that every person is entitled to the "equal protection" of the laws.  But that does not mean that every case applying the Equal Protection Clause uses the same analysis or that those "long-standing" principles require the same results in all cases.

An examination of the government's proposed weighing of each of the *Mathews* factors demonstrates that the government's argument that *Mathews* tilted in its favor was reasonable. Starting with the private-interest factor, the government never argued that this *Mathews* factor did not favor plaintiffs. Instead, it simply argued that this factor should be given less weight because plaintiffs' interests were "tempered" by alternative procedures for obtaining new benefits. 17-5206 CA6 R.21, Gov't. Brief, at 38. The *Hicks* majority concluded that the government's argument was incorrect, but in doing so, it did not cite to any binding case law that demonstrated that the government's argument on the first factor was wrong. *Hicks*, 909 F.3d at 802–03. Instead, it based its decision on its own weighing of the private interest. *Id.* And as Judge Rogers showed in his dissent, a reasonable person could have placed less weight on this factor than did the majority. *Id.* at 816–17 (Rogers, J., dissenting). Given that the government did not argue that the plaintiffs' interests were non-existent, the government's position on this factor was not unreasonable.

Similarly, the government's argument on the governmental interest factor—that there was an interest in conserving public resources—was reasonable. While the majority was not convinced that this factor justified the government's procedure, the government's brief cited to Supreme Court case law acknowledging that the government had an interest in conserving resources, *see Mathews*, 424 U.S. at 348, circuit case law stating that social security adjudications are typically non-adversarial, *see Flatford v. Chater*, 93 F.3d 1296, 1306 (6th Cir. 1996), and multiple district court cases holding that full hearings on the question of fraud would significantly burden the government, *see, e.g.*, *Robertson v. Berryhill,* No. CV 3:16-3846, 2017 WL 1170873, at *9 (S.D. W. Va. Mar. 28, 2017). Based on this wealth of supporting case law, the government's contention that it had substantial interests was not unreasonable.

Finally, the government's argument regarding the risk of erroneous deprivation—while the closest to being unreasonable—was not so weak that no reasonable person could accept it. The government's argument was, essentially, that its current procedures minimized the risk of erroneous deprivation, especially in light of the low standard of review. The panel majority noted that this argument was foreclosed by *Hamdi*, but plaintiffs never argued in their briefing that *Hamdi* supported their argument on this *Mathews* factor. *Hicks*, 909 F.3d at 800–02.

Therefore, it was not unreasonable for the government to fail to counter it. Furthermore, as Judge Rogers showed, a reasonable person could believe that the risk of erroneous deprivation was low because of the standard of review and the allegedly low probability that these reports would change the outcome of the redetermination hearings. *Hicks*, 909 F.3d at 819–21 (Rogers, J., dissenting). Although these arguments did not prevail, a reasonable person could have believed them correct given the flexibility of the *Mathews* standard and the novelty of this issue.

This claim is more akin to one that "the government lost because an unsettled question was resolved unfavorably" than one that "the government lost because it vainly pressed a position 'flatly at odds with the controlling case law.'" *Taucher*, 396 F.3d at 1174 (quoting *Am. Wrecking Corp. v. Sec'y of Labor*, 364 F.3d 321, 326–27 (D.C. Cir. 2004)). Or, at least, the district courts did not abuse their discretion in reaching that conclusion. Plaintiffs argue that the government's argument was not substantially justified because "all three factors of the balancing test favored plaintiffs" and this issue was not a "close call." CA6 R.40, Reply Br., at 24. But the standard is not whether the case was a "close call." It is whether a reasonable person could believe that the government's argument was correct. An examination of the precedent cited by the government in support of its argument, the rationale for the majority's decision, and "objective indicia" of reasonableness—such as Judge Rogers's dissenting opinion and the fact that district courts across the country have split on this issue—demonstrates that the government's position on the due process issue was substantially justified.

B.

Next, we move to the government's arguments on the APA claim. Here, the government maintained that it had complied with the requirements of the APA and had not acted arbitrarily and capriciously by differentiating between fraud investigated by the OIG and fraud investigated by the SSA. While the government may not have always presented its arguments on this issue in the most cogent manner, when the substance of the government's arguments is considered, a reasonable person could have believed that the government's position was correct. Therefore, the district courts did not abuse their discretion in finding that government's arguments regarding the APA claims were reasonable.

1.

The government's argument that it had complied with the APA's formal adjudication requirements, or, in the alternative, that it did not have to comply with those requirements, was substantially justified.  In the underlying litigation, the government primarily argued that its redetermination procedures had complied with the APA's formal adjudication requirements.  Specifically, it claimed that it had complied with all of the procedures required by 42 U.S.C. § 405(b)(1), "[a]nd because the protections provided by § 405(b)(1) are co-extensive with the APA's provisions on formal adjudications . . . the redetermination process complied with those provisions as well."  17-5206 CA6 R.36, Gov't. Brief, at 46–47 (internal citation omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 408 (1971).  The government now contends that it also argued to the original panel that § 405(b)(1) did not apply to redeterminations, and therefore, the APA did not require a redetermination hearing.

The majority rejected these arguments.  It first concluded that the government had not properly raised the argument that it did not have to comply with § 405(b)(1) or provide a hearing. *Hicks*, 909 F.3d at 804 n.5.  Additionally, the majority rejected the government's contention that it had complied with the APA's formal adjudication requirements.  *Id.* at 805.  The dissent disagreed with the majority on both points.  *Id.* at 823–24, 824 n.8 (Rogers, J., dissenting). Despite the fact that the government's arguments were rejected, a reasonable person could have believed them to be correct.

First, a reasonable person could have agreed with the government's argument that it did not have to comply with § 405(b)(1) or provide a hearing.  Plaintiffs argue that the fact that the panel found that the government did not raise this argument "dooms" the government's argument on this point because "[h]aving failed to make the argument in *Hicks*, the government cannot now point to the argument as evidence that its position was substantially justified."  CA6 R.40, Reply Br., at 18; *see also* CA6 R.31, Appellant Br., at 36–37.  But plaintiffs misconstrue the question at hand.  The question is not whether the panel found that the government raised this argument; it is whether a reasonable person could have believed that the government raised this argument.  *See Pierce*, 487 U.S. at 566 n.2.  Given that the government explicitly stated in its brief before the original panel that a full hearing before an ALJ "'*is not mandated by the specific*

*section regarding redeterminations*,' but the redetermination process as implemented by SSA nonetheless provides the protections guaranteed by § 405(b)(1)," a reasonable person could have believed that the government raised the argument that it did not have to comply with § 405(b)(1). *See* 17-5206 CA6 R.36, Gov't. Brief, at 46–47 (emphasis added).  This conclusion is bolstered by the fact that the case cited by the government in support of this statement "recognize[d] that [a redetermination] hearing is not mandated by the specific section regarding redeterminations." *Id.* (citing *Robertson*, 2017 WL 1170783, at \*13, 12 n.13.  Additionally, the government clearly raised this argument in the district court proceedings, so a consideration of the government's position "as a whole" may take this argument into account. *See Memphis Health Ctr.*, 526 F. App'x at 614 (noting that courts should look at the position the government took during "all phases of civil litigation").  On the merits of this argument, a reasonable person could have believed the government's position was correct for the reasons laid out in Judge Rogers's dissent. *Hicks*, 909 F.3d at 823–24.

Second, a reasonable person could have agreed with the government's position that it had done all that was required by the APA's formal adjudication provisions.  In the underlying litigation, the government argued that because (1) it complied with the requirements of § 405(b)(1), and (2) "the protections provided by § 405(b)(1) are co-extensive with the APA's provisions on formal adjudication," it had done all that was required by the APA's formal adjudication requirements.  CA6 R.36, Appellee Br., at 42.  The majority rejected this argument because it believed that the second step of the syllogism was based on a misreading of the Supreme Court case *Richardson v. Perales*, which the government cited in its brief.  In *Perales*, the claimant argued that he was entitled to cross-examination during a disability claim proceeding because "the Administrative Procedure Act, rather than the Social Security Act, governs the processing of claims."  402 U.S. at 408.  The Supreme Court stated: "[w]e need not decide whether the APA has general application to social security disability claims, for the social security administrative procedure does not vary from that prescribed by the APA.  Indeed, the latter is modeled upon the Social Security Act." *Id.* at 409.  It then "explained that the protections laid out in § 556(d) of the APA 'conform, and are consistent with, rather than differ from or supersede, the authority given the Secretary by the Social Security Act[].'" *Hicks*, 909 F.3d at 805 n.6 (quoting *Perales*, 402 U.S. at 409).  The government read the Supreme

Court's statement in *Perales* that "the social security administrative procedure does not vary from that prescribed by the APA" broadly and argued that the two Acts were coterminous. The majority disagreed and stated that the Supreme Court's focus in *Perales* was solely on § 556(d), and, therefore, the statement that "the social security administrative procedure does not vary from that prescribed by the APA" was limited to § 556(d). *Hicks*, 909 F.3d at 805 n.6.

The majority's reading of *Perales* is the better (and correct) reading, but that does not necessarily mean that the government's position was unreasonable. The government construed the Supreme Court's language broadly—perhaps more broadly than it was meant—but arguments advocating for a broad or narrow interpretation of case law are a common and welcome occurrence in an adversarial system. This language was not so clearly limited to its facts that no reasonable person could have believed it applied to this case. *See Escobar Ruiz v. INS*, 838 F.2d 1020, 1026 (9th Cir. 1988) (seeming to interpret *Perales* broadly, albeit in passing). Additionally, as plaintiffs themselves noted in the district court, this was a matter of "first impression." 17-5206 DE 22, Pl. Mot. for Partial Summ. J., PageID 1071. Therefore, the government had greater discretion to craft its arguments than in a case governed by settled law. After taking all of these circumstances into account, we conclude that the government's arguments regarding the APA's formal adjudication requirements were reasonable.

2.

A reasonable person could also find that the government's argument that it did not act arbitrarily and capriciously was correct. In the underlying litigation, the government first contended that plaintiffs had forfeited their arbitrary and capricious claims by failing to raise them in the district courts. 17-5206 CA6 R.36, Gov't. Brief, at 48–49. It also argued that, even if plaintiffs had not forfeited these claims, the government did not act arbitrarily and capriciously because cases involving "beneficiaries whose redeterminations are triggered by referral from a law enforcement agency and those whose redeterminations are triggered by SSA findings do not present 'like cases.'" *Id.* at 50. The panel majority found that plaintiffs had not forfeited their arbitrary and capricious claim and rejected the government's arguments because the government could not rely on post hoc rationalizations to justify the differential treatment and, even if it could, those post hoc rationalizations were insufficient. *Hicks*, 909 F.3d at 806–09

Although the *Hicks* majority found that plaintiffs had preserved their arbitrary and capricious claim, we recognize that plaintiffs had only raised this argument in the district court in a footnote and a sentence (contained in a section of plaintiffs' brief titled "additional context") that said that the government's "arbitrary" actions "suggest[ed] a due process of Administrative Procedure Act violation." *Hicks*, 909 F.3d at 807 n.10 (citing plaintiffs' briefings below). The government's position that plaintiffs had forfeited this argument was, therefore, reasonable. Additionally, on the merits of this argument, the majority turned to an out of circuit case to support its holding that treating cases involving OIG-instigated claims differently than cases involving SSA-instigated claims was arbitrary and capricious. *See id.* at 807 (citing *Miller v. Bond*, 641 F.2d 997 (D.C. Cir. 1981)). While exclusive reliance on persuasive precedent does always not mean that the government's position was substantially justified, the lack of binding authority coupled with the government's forfeiture argument means that a reasonable person could have believed that the government had the better of this argument.

C.

Unlike its arguments on the due process claim and the APA claim, the government's argument that the remand to the ALJ should have been under sentence six of § 405(g) was not substantially justified because it was foreclosed by binding Supreme Court and circuit precedent. When a district court remands a case to the Social Security Administration, it must do so under one of two sentences in 42 U.S.C. § 405(g). A sentence four remand is proper when the court is entering "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (quoting 42 U.S.C. § 405(g)). Sentence four, therefore, applies to cases in "which the Secretary has failed to provide a full and fair hearing, to make explicit findings, or to have correctly appl[ied] the law and regulations." *Id.* at 101 (citing H.R. Rep. No. 96-100). In contrast, a sentence six remand is proper when the court "does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding[.]" *Id.* at 98.

Here, the government argued that a remand was proper under sentence six, not sentence four, because "it would be premature to rule on the correctness of the ALJ's redetermination decision." *See, e.g.*, 0:16-cv-62 (E.D. Ky.) DE 29, Mot., PageID 759, 764. The problem with this argument is that it runs head-first into binding precedent. As the Supreme Court recognized, sentence four remand is proper when "the Secretary has failed to provide a full and fair hearing", *see Melkonyan*, 501 U.S. at 101, which is exactly what the majority held the government had failed to provide in this case, *see Hicks*, 909 F.3d at 804 (holding that the hearings violated due process). The government also argued that remand under sentence six was proper because this was a case involving "new evidence." *See, e.g.*, 0:16-cv-62 (E.D. Ky.) DE 29, Mot., PageID 765. But as plaintiffs point out, there is Sixth Circuit precedent stating that a sentence four remand does not preclude the introduction of new evidence in front of the ALJ. *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 174–75 (6th Cir. 1994) ("[The party's] argument that when additional evidence is required, a case may be remanded to the Secretary only pursuant to sentence six . . . is clearly erroneous."). The only precedent that the government cites to counter that holding is inapposite. *See DeLong*, 748 F.3d at 725 n.3 (discussing what evidence the *district court* can consider under both types of remand). Because the government's argument on this issue was contrary to binding Supreme Court and Sixth Circuit precedent, it was not substantially justified. *See Perket*, 905 F.2d at 135.

## D.

Now that we have considered each of the government's arguments individually, we must consider them together. Looking at the arguments holistically, we hold that the district courts did not abuse their discretion in concluding that the government's position was substantially justified.

First, the "objective indicia" of reasonableness point towards a finding that the government acted reasonably. *See Pierce*, 487 U.S. at 568–69 (discussing objective indicia). For example, Judge Rogers issued a well-reasoned dissent disagreeing with the panel majority's holdings that the government had violated the Due Process Clause and the APA. *See EEOC v. Clay Printing Co.*, 13 F.3d 813, 816 (4th Cir. 1994) (noting that the dissenting judge's views should be "considered" but not given dispositive weight). While the presence of a dissent may

not always demonstrate that the government's position was substantially justified, the deliberate and thoughtful nature of Judge Rogers's reasoning signals that reasonable minds could disagree on these issues. Courts across the country have also divided on the correct resolution of these cases. *Compare, e.g.*, *Taylor v. Berryhill*, No. 1:16-cv-44, 2018 WL 1003755, at *11, 18 (W.D. Va. Feb. 21, 2018) (no due process or APA violations); *Smith v. Comm'r of Soc. Sec.,* No. 6:17-cv-1084, 2017 WL 5256872, *5 (M.D. Fla. Nov. 13, 2017) (no due process violation), *with, e.g.*, *Jaxson v. Saul*, 970 F.3d 775, 778 (7th Cir. 2020) (finding that the plaintiff had to be given the right to contest the fraud finding, but not on due process grounds and only in writing); *Kirk v. Berryhill*, 388 F. Supp. 3d 652, 662 (D.S.C. 2019) (finding due process violation), *appeal docketed*, No. 19-1989 (4th Cir. Sept. 11, 2019). While a "string of successes" would be stronger evidence of the reasonableness of the government's position than a mixed bag of results, a split in the courts still leans in the government's favor. *Cf. Pierce*, 487 U.S. at 569. Additionally, two out of three district courts in the underlying litigation agreed that the government had not violated the Due Process Clause or the APA. *See Hicks*, 909 F.3d at 796. Although we are mindful of the Supreme Court's direction not to place too much weight on these objective indicia, they bolster the conclusion that the government's position was substantially justified.

Second, as the government points out, this case involved numerous issues of first impression. It was also the first case arising out of Conn's fraud and the subsequent redetermination hearings to be decided by a court of appeals. Since then, other courts of appeals have agreed with this court's conclusion that the government's redetermination procedures were not sufficient, but the government did not have the benefit of any of those decisions when it took its position in this case. *See, e.g.*, *Jaxson v. Saul*, 970 F.3d at 778. Given the novelty of both the legal claims and the subject matter, the government had more leeway to construct its arguments. *See Roanoke River Basin*, 991 F.2d at 139 (cautioning courts that the EAJA was not designed to "chill the government's right to litigate.").

Third, and most importantly, the government's arguments on the "prominent" issues in the litigation were reasonable. Given that the government raised reasonable arguments as to why it had not allowed plaintiffs to challenge the fraud finding, its decision not to allow them to do so

was substantially justified. The only issue on which we find the government did not take a reasonable position was the sentence four/sentence six remand issue. That issue was significantly less important than the other issues involved in the case, and it is easily disentangled from the due process and APA claims. *See Memphis Health Ctr.*, 526 F. App'x at 615. Therefore, the unreasonableness of the position on the remand issue does not undermine the reasonableness of the government's position as a whole, and we hold that the district courts did not abuse their discretion in finding that the government's position was substantially justified.

*Glenn v. Commissioner of Social Security* does not compel the opposite conclusion. *See* 763 F.3d 494 (6th Cir. 2014). In *Glenn*, the district court held that the government's position defending an ALJ determination was substantially justified because "more than half" of the errors that the plaintiff raised lacked merit. *Id.* at 497. This court held that the record still required reversing the ALJ's decision for five independent reasons. *Id.* at 499. And on each of those five issues, the government had not taken a reasonable position because the position was either plainly contrary to binding law or the facts in the record. *Id.* at 499–500.

Plaintiffs argue that *Glenn* stands for the proposition that a "string of [five] losses" in the same litigation (i.e. a finding that the government was wrong on five independent issues) demonstrates a lack of substantial justification. CA6 R.31, Appellant Br., at 26–28. To the extent that plaintiffs argue that multiple losses provide "objective indicia" that the government's position was not substantially justified, we agree. However, *Glenn* does not mean that simply losing on multiple grounds is sufficient to show that a position was not substantially justified. Instead, as the analysis in *Glenn* itself shows, the focus remains on the merits and reasonableness of each argument, not a tallying of losses or wins. *See* 763 F.3d at 499–500; *see also id.* at 498 ("*Pierce* does not reduce the 'substantially justified' standard to a matter of comparing the number of successful claims to unsuccessful claims in a single appeal.") Therefore, while the *Hicks* majority's holding that remand was required for multiple reasons is "objective indicia" of unreasonableness, it does not change the conclusion that the district courts did not abuse their discretion.

E.

Plaintiffs also argue that the district courts' decisions must be reversed because the district courts relied on "errors of law." CA6 R.31, Appellant Br., at 28; CA6 R.40, Reply Br., at 27. As plaintiffs point out, the question of whether the district courts committed errors of law is reviewed de novo, not for abuse of discretion, and they contend that the district courts erred as a matter of law in four ways. *Lawrence*, 735 F.3d at 405. First, they maintain that the district courts erred as a matter of law by "merely tallying decisions" in contravention of *Pierce* and *Wall*. CA6 R.31, Appellant Br., at 29. Second, they claim that the district courts ignored or contradicted *Hicks*. Third, they contend that the district courts relied on an argument that the government did not make, which is not permitted under the EAJA. Fourth, they argue that the district courts failed to consider the government's position "as a whole" in violation of *Pierce* and *Memphis Health Center*. We find none of these arguments persuasive.

Plaintiffs' first argument—that the district courts erred as a matter of law by placing too much weight on "objective indicia" of reasonableness—is unpersuasive because how a district court chooses to balance relevant factors is, with some limitations, within its discretion. The abuse of discretion standard recognizes that the application of general standards—such as the substantially justified standard—may lead different jurists to different results. *See Pierce*, 487 U.S. at 562 ("[T]he question whether the Government's litigating position has been 'substantially justified' is precisely such a multifarious and novel question, little susceptible, for the time being at least, of useful generalization, and likely to profit from the experience that an abuse-of-discretion rule will permit to develop."). While there may be some cases in which a district court's weighing of a particular factor constitutes an error of law—such as when the court completely ignores a factor that it has been instructed to consider or relies on a factor that it has been instructed is not relevant—we must be careful not to define the class of errors of law so broadly as to effectively turn the abuse of discretion standard into de novo review. *Cf., e.g.*, *Jackson v. Law Firm of O'Hara*, 875 F.2d 1224, 1230 (6th Cir. 1989) (noting that the wholesale failure to consider a necessary factor constitutes abuse of discretion).

Here, the district courts recognized that there were "objective indicia" of reasonableness—such as the presence of a dissenting opinion and other district courts that had

agreed with the government's position—that indicated that the government's position was substantially justified.  *Perkins*, 2020 WL 109808, at *3; *Reed*, 2019 WL 6119220, at *3; *Griffith*, 2019 WL 5191831, at *7.  However, none of the district courts stated that they were relying exclusively (or even primarily) on the presence of objective indicia of reasonableness.  Each of them noted that the merits were the "most important" part of the analysis (although the *Reed* and *Perkins* courts did qualify this statement with the word "perhaps").  *Perkins*, 2020 WL 109808, at *4; *Reed*, 2019 WL 6119220, at *4; *Griffith*, 2019 WL 5191831, at *7 (focusing almost the entire discussion on the merits, although not explicitly stating that the merits were the "most important" part of the analysis).  Based on these statements and our review of the entirety of the district courts' opinions, we cannot say that the district courts' weighing of the relevant factors were so deficient as to constitute errors of law.[2]

Plaintiffs' second argument is that the district courts erred as a matter of law in failing to give *Hicks* proper weight.  In making this argument, plaintiffs once again conflate the panel majority's conclusion that plaintiffs had the better argument with a conclusion that no argument to the contrary was reasonable.  However, it is possible both to afford *Hicks* proper weight and to conclude that the government's position was reasonable.  *See supra* Part IV.A.  The district courts did just that, and their analyses do not leave us "firmly convinced" that an error was made. *See Damron*, 104 F.3d at 855.

Plaintiffs' third argument is that the district courts erred in relying on an argument that the government did not make—the argument that the government was not required to comply with the formal adjudication requirements while conducting redeterminations.  But as discussed above, a reasonable person could have believed that the government raised that argument before the panel, and it certainly raised it at the district court level.  *See supra* Part IV.B.1.  Therefore, the district courts properly relied on this argument when considering whether the government's position was reasonable.

---

[2]Plaintiffs also gloss over the fact that this is not a case in which "one court" has agreed with the government's position.  *Cf. Pierce*, 487 U.S. at 569.  Two district courts in this circuit, a dissenting judge, and multiple out-of-circuit district courts have all agreed with the government's position.  Therefore, the district courts were entitled to place more weight on these objective indicia than they would have been in a case in which "one court" had agreed with the government.

Plaintiffs' final argument—that the *Reed* and *Perkins* courts failed to consider the government's position as a whole—fails because the courts' statements to which plaintiffs object were clearly dicta. *See, e.g.*, *Reed*, 2019 WL 6119220, at \*5 ("The Court finds that, *even if arguendo* the Government's position on the APA issue that was found to be arbitrary and capricious is not substantially justified, the other more prominent claims under the Due Process Clause and APA, including those originally raised by Plaintiffs in this litigation, were substantially justified." (emphasis added)). Those statements do not demonstrate that the district courts erred as a matter of law.

V.

For the foregoing reasons, we affirm the district courts' denial of plaintiffs' motions for attorney's fees under the EAJA.

———————————

**DISSENT**

———————————

KAREN NELSON MOORE, Circuit Judge, dissenting.  I respectfully dissent from the denial of attorney fees to plaintiffs because I believe that the majority's holding is counter to Congress's intent in passing the Equal Access to Justice Act ("EAJA") and that the government's position in *Hicks v. Commissioner of Social Security*, 909 F.3d 786 (6th Cir. 2018), was not substantially justified.

The majority's reasoning leads to a result that is directly contrary to Congress's goal in enacting the Equal Access to Justice Act.  The EAJA reflects Congress's concern that the prior "American rule," in which litigants paid their own attorney fees, "deterred [individuals] from seeking review of or defending against unreasonable governmental action because of the expense involved."  H.R. Conf. Rep. No. 1434, 96th Cong., 2d Sess. 21 (1980), *reprinted in,* 1980 U.S.C.C.A.N. 5003, 5010.  Congress intended the EAJA "to diminish this deterrent effect by providing in specified situations for an award of attorney fees and other costs."  *Id.*  The "substantially justified" standard was "an acceptable middle ground between an automatic award of fees and the restrictive standard proposed by the Department of Justice."  H.R. Rep. No. 1418, 96th Cong., 2d Sess. 14 (1980), *reprinted in,* 1980 U.S.C.C.A.N. 4984, 4993.  The Senate Committee Report remarked that the standard that "prevailing [parties] should recover fees only upon a finding that [the Government's] action was frivolous, unreasonable or without foundation" is "inappropriate" because it "would not overcome the strong disincentives to the exercise of legal rights which now exist in litigation with the Government."  S. Rep. No. 253, 96th Cong., 1st Sess. 6 (1979).  The substantially justified standard "address[es] the problems of abusive and harassing regulatory practices" and "is intended to caution agencies to carefully evaluate their cases and not to pursue those which are weak or tenuous."  H.R. Rep. No. 1418 at 14, 1980 U.S.C.C.A.N. at 4993.

The majority deviates from this "acceptable middle ground" and precludes attorney fees whenever the government can muster a passable argument.  Government attorneys are unlikely to present arguments without any basis in law or fact; they are well-resourced, repeat players in

this court.  Yet, as the most recent report on the EAJA shows, federal agencies reported 8,334 fee awards totaling $58,779,452.84 paid under the EAJA.  Admin. Conf. of the United States, *Equal Access to Justice Act Awards Report to Congress Fiscal Year 2019*, at 3 (Mar. 2020).

The Supreme Court has interpreted "substantially justified" to require that the government's position be "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  In another formulation, the government's position must have a "reasonable basis both in law and fact."  *Id.*  Of course, "[t]o be 'substantially justified' means . . . more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve."  *Id.* at 566.  In essence, the substantially justified standard is "a 'think twice' prescription that 'stem[s] the urge to litigate irresponsibly.'"  *Scarborough v. Principi*, 541 U.S. 401, 416 (2004) (quoting *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 116 (2002)).  Although "objective indicia," such as "views expressed by other courts on the merits of the Government's position," are relevant, this is not dispositive.  *Underwood*, 487 U.S. at 569.  "The Government bears the burden of proving that a given position was substantially justified."  *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 725–26 (6th Cir. 2014).

Here, the district courts abused their discretion by concluding that the government's position was substantially justified because of earlier decisions, which we subsequently reversed, and a dissent to our majority decision.  The Supreme Court has made clear that "the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified."  *Underwood*, 487 U.S. at 569.  Disagreement by certain district courts with the merits decision of this court should not preclude plaintiffs from recovering attorney fees when the government's litigating position is unreasonable.[1]  *Howard v. Barnhart*, 376 F.3d 551,

---

[1]After this panel's decision in *Hicks*, nearly all of courts that have examined the SSA's redetermination have found our decision to be persuasive and agreed that the SSA's redetermination process violated plaintiffs' due process rights or the Administrative Procedure Act.  *Compare Jaxson v. Saul*, 970 F.3d 775, 778 (7th Cir. 2020) (holding that the SSA's process violated the Administrative Procedure Act and declining to reach the constitutional questions); *Menendez v. Comm'r of Soc. Sec.*, No. 18-1962, 2020 WL 5075991, at *5 (D.P.R. Aug. 27, 2020) (denying defendant's motion to dismiss plaintiff's procedural due process challenge to the SSA's process); *Kirk v. Berryhill*, 388 F. Supp. 3d 652, 662 (D.S.C. 2019), *appeal docketed,* No. 19-1989 (Sept. 11, 2019) (holding that the SSA's process violated plaintiff's due process rights); *Agosto v. Comm'r of Soc. Sec.*, No. 18-1271, 2019 WL

554 (6th Cir. 2004) (criticizing the district court for "overemphasiz[ing]" "that the administrative law judge, magistrate and itself had all agreed with the denial of the disability benefits" when it denied the applicant's motion for attorney fees); *see also United States ex rel. Wall v. Circle C Constr., LLC*, 868 F.3d 466, 471 (6th Cir. 2017) (concluding that the district court erred in holding "that the government's theory was reasonable simply because the court itself had twice accepted the theory" when government's position was not substantially justified on its merits). We have held that the government's position was not substantially justified even when one member dissented from our decision on the merits of the government's decision. *See Guzzo v. Thompson*, 393 F.3d 652, 655 (6th Cir. 2004); *Pablo Lorenzo v. Barr*, 806 F. App'x 431, 434 (6th Cir. 2020); *see also Friends of Boundary Waters Wilderness v. Thomas*, 53 F.3d 881, 885 (8th Cir. 1995); *E.E.O.C. v. Clay Printing Co.*, 13 F.3d 813, 816 (4th Cir. 1994).

Although there was disagreement among district courts on the merits of this case, the government suffered a "string of losses" because we concluded in *Hicks* that the government's argument failed on the two due process claims, the two APA claims, and the nature of the remand claim. *See Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (concluding that because there were "five separate bases" for remand, this "string of losses" indicates that the government's position was not substantially justified). *Cf. Amezola-Garcia v. Lynch*, 835 F.3d 553, 555 (6th Cir. 2016) (holding that the government's position was substantially justified in part because we found most of the government's arguments to be correct and remanded the applicant's case based on a "distinct" and less "prominent" issue).

---

6190612, at *5–6 (D.P.R. Nov. 20, 2019) (same); *Nieves-Ocasio v. Comm'r of Soc. Sec.*, No. 18-1396, 2019 WL 5266890, at *6 (D.P.R. Oct. 17, 2019) (same); *Sepulveda-Vega v. Comm'r of Soc. Sec.*, No. 17-1835, 2019 WL 4858800, at *7 (D.P.R. Sept. 30, 2019) (same); *Alicea Gonzalez v. Comm'r of Soc. Sec.*, No. 18-1222, 2019 WL 4233925, at *12–13 (D.P.R. Sept. 6, 2019) (same); *Rivera-Cepeda v. Comm'r of Soc. Sec.*, No. 18-1092, 2019 WL 4201573, at *12–13 (D.P.R. Sept. 5, 2019) (same); *Picon-Gonzalez v. Comm'r of Soc. Sec. Admin.*, No. 18-1016, 2019 WL 4187701, at *16 (D.P.R. Sept. 4, 2019) (same), *with Robertson v. Saul*, No. CV 3:16-3846, 2020 WL 3036012, at *2 (S.D.W. Va. June 5, 2020) (rejecting the conclusion in *Hicks* and affirming its prior holding that the SSA's redetermination process did not violate plaintiff's due process rights). Recently, a district court awarded attorney fees to a former client of Eric Conn who had challenged the SSA's redetermination process. *Bryant v. Saul*, No. 1:17CV220, 2020 WL 7137874, at *5 (N.D. Ind. Dec. 7, 2020) ("Rather than give the claimants a chance to argue that the medical evidence in their case honestly supported their claims, [the government] threw out the evidence and required the claimants to, years later, present entirely new evidence. For [the government] to continue to argue that this procedure was substantially justified borders on the unconscionable.").

The validity of the government's arguments is fully addressed in our decision in *Hicks.* In brief, the government's litigating position that the redetermination process comported with due process and the APA was not substantially justified. Our reasoning in *Hicks* follows from long-standing Supreme Court precedent and is hardly novel. As this panel noted in *Hicks*, "[l]ong before *Mathews*, the Supreme Court recognized the 'immutable' principle that 'where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.'" 909 F.3d at 797 (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959)). The Supreme Court has continued to reaffirm and apply this principle, including in *Mathews*. *Id.* (collecting cases). The government's argument contravened Supreme Court precedent, and therefore was not substantially justified. *See Perket v. Sec'y of Health & Human Servs.*, 905 F.2d 129, 135 (6th Cir. 1990). As to the government's argument that it was substantially justified in following the traditional three-part *Mathews v. Eldridge* test, we applied the *Mathews* test in the alternative and concluded that all three factors favored the plaintiffs. *Hicks*, 909 F.3d at 799–804. Finally, the redetermination process clearly violated the APA because it failed to meet the standards for a formal hearing and treated similarly situated applicants differently. *Id.* at 804–09.

For these reasons, I would conclude that the government's position was not substantially justified and would award the plaintiffs their attorney fees. I respectfully dissent.